**GOVERNMENT OF THE VIRGIN ISLANDS**

v.

**CHARLES CALLWOOD, Appellant**

No. 18,536

United States Court of Appeals

Third Circuit

Submitted January 29, 1971

Decided March 9, 1971

*See, also, 440 F.2d 1206*

WILLIAM C. LOUD, ESQ. (LOUD, CAMPBELL and DENNEN-BERG), Charlotte Amalie, St. Thomas, V.I., *for appellant*

ROBERT M. CARNEY, ESQ., United States Attorney, Charlotte Amalie, St. Thomas, V.I., *for appellee*

Before KALODNER, FREEDMAN and ADAMS, *Circuit Judges*

OPINION OF THE COURT

ADAMS, *Circuit Judge*

This case presents an interesting problem concerning the application of United States v. Wade, 388 U.S. 218 (1967), which held that the presence of counsel was required at a

post-indictment line-up. The specific question at issue is whether a one-man confrontation without the assistance of counsel of a suspect by a robbery victim at a police station two hours after the crime violated the defendant's Sixth Amendment right to have the assistance of counsel at all critical stages of the proceedings against him.[1] If that right was violated, we must then inquire whether the in-court identification of the defendant by the victim "had an independent source," apart from the impermissible confrontation.

The victim in this case, Kare Asjernesen, is a Norwegian seaman whose ship was docked at St. Thomas, Virgin Islands, on December 14, 1968. At about 1:00 or 1:30 a.m., Asjernesen was leaving the men's room of Katie's Bar in St. Thomas when he was approached by a stranger who engaged him in conversation. As they stood for a few moments talking in the narrow corridor outside the men's room, a barmaid squeezed by them on her way to and from the ladies' room. Suddenly, the man drew a knife from his belt, held it to the seaman's neck, took $8.00 in one dollar bills from him, and then ran out of the bar. Asjernesen immediately told the barmaid that the man to whom he had been talking had just robbed him.

The police arrived shortly after 2:00 a.m., and they received a description of the robber as a dark brown Negro with thick lips, five feet, ten inches tall, weighing 135 to 140 pounds, wearing pink pants and white shoes. They also learned at that time that Asjernesen's ship would be leaving at 1:00 p.m. the same day. The barmaid told the police that she recognized the person to whom Asjernesen had been talking as a man named "Al" or "Bomba." The investigating detective knew "Bomba" as a nickname of the defendant and alerted police headquarters regarding

---

[1] The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."

the suspect's identity. The defendant was arrested at about 3:40 a.m. as he was leaving the Crazy Cow Restaurant, and he was taken to the police station. The defendant was wearing pink pants and white shoes, but testified at trial that he was slightly over six feet tall and weighed 195 pounds. Shortly after the defendant's arrest, the police asked Asjernesen to come from his ship to the police station to see if the defendant was the man who robbed him. Asjernesen came to the police station and identified the defendant, Charles Callwood, as the robber.

At trial, defendant's counsel raised the issue of the propriety of Asjernesen's station house identification of Callwood. The Honorable A. Leon Higginbotham conducted a pre-trial hearing, provisionally found that even if the prior identification was faulty Asjernesen's present in-court identification had an independent source, and then permitted the in-court identification to be made before the jury.[2] Callwood was found guilty of robbery in violation of 14 V.I. Code § 1861, and was sentenced to ten years' imprisonment.[3] In ruling on post-trial motions, Judge Higginbotham reaffirmed his earlier decision, and added that even if the in-court identification were tainted, it was harmless in view of the evidence against the defendant, particularly the independent identification by the barmaid (who had not seen Callwood at the police station) as the man who Asjernesen said robbed him. Cf. United States v. Phillips, 427 F.2d 1035, 1037 (9th Cir. 1970).

The evidence adduced at the hearing on the admissibility of Asjernesen's present identification was somewhat confusing, in part because Asjernesen's understanding of English was imperfect. It is clear that Callwood was seated in the police station beside at least one and perhaps

---

[2] No reference was made to the station house identification in Asjernesen's direct examination before the jury. Defendant's counsel did elicit a description of the circumstances from Asjernesen on cross-examination.

[3] The robbery in this case was committed while the defendant was on probation resulting from his pleading guilty to a previous robbery charge.

two plainclothes detectives who did not have an appearance similar to his. The Government tried to show that Asjernesen's identification of Callwood was spontaneous and immediate upon seeing him.

Defendant tried to show that Asjernesen's identification was prompted by one of the officers pointing and asking, "Is that the guy?" The testimony of Asjernesen, himself, contains statements supporting both versions of the confrontation. Defendant testified that Asjernesen's identification was made only when the police pointed to him and asked if he were the man. Both officers who testified said that Asjernesen's identification was spontaneous.

■ The trial judge appears to have assumed that the identification was at a "critical stage" in the proceedings against the defendant. We believe such assumption is correct. The Supreme Court in Wade noted that for Fifth Amendment purposes the protection of the presence of counsel had been extended to custodial interrogation by Miranda v. Arizona, 384 U.S. 436 (1966), and that the same principle was applicable for Sixth Amendment purposes whenever "counsel's absence might derogate from the accused's right to a fair trial." 388 U.S. at 226, 227. The Court went on to point out that "once a witness has picked out the accused at the line-up, he is not likely to go back on his word later on, so that in practice the issue of identity may (in the absence of other relevant evidence) for all practical purposes be determined there and then, before the trial." 388 U.S. at 229. This very danger was amplified in the present case because after the identification Asjernesen sat in the same room with the defendant for about an hour, filling in the details of his complaint and looking occasionally at the defendant. Had counsel been present, he no doubt could have attacked more effectively at the trial not only the station house identification, but also the in-court identification. See Wade, supra, at 241;

Rivers v. United States, 400 F.2d 935, 939–940 (5th Cir. 1968). Additionally, in Stovall v. Denno, 388 U.S. 293, 302 (1967), the Court stated explicitly that "[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a line-up, has been widely condemned."

The Government argues that the rule of Wade has exceptions, particularly for on-the-scene identifications made soon after the crime. See e.g., Russell v. United States, 408 F.2d 1280 (D.C. Cir. 1969). Assuming the validity of such an exception, the cases providing for it have generally limited the circumstances both to a location at the scene of the crime and to a period of time within minutes of the crime. Russell v. United States, supra, at 1284, fn 20; Soloman v. United States, 408 F.2d 1306 (D.C. Cir. 1969); McRae v. United States, 420 F.2d 1283 (D.C. Cir. 1969) (factual situation pre-Wade); United States v. Wilson, 435 F.2d 403 (D.C. Cir. 1970). The rationale for permitting prompt on-the-scene confrontations includes the desirability of preventing an innocent man from being unnecessarily held in jail, the difficulty of obtaining counsel in pre-dawn hours, the likelihood that the witness' identification will be more accurate at that time, and perhaps most important, the need to enable the police to continue the search immediately—while the culprit may still be in the vicinity—if they have apprehended the wrong man. However, when the scene has shifted to the police station, and to a period of time two or more hours after the crime—when the factors enumerated above are no longer as pressing—then the prophylactic rule of Wade, requiring the presence of counsel, is applicable.[4] While Asjernesen's ship was to leave the next afternoon, time was not so short as to make immediate

---

[4] But compare United States v. Conway, 415 F.2d 158 (3rd Cir. 1968), dealing with photographic identification.

identification imperative. Moreover, even if Asjernesen became temporarily unavailable for identification purposes, the barmaid could still view the defendant in an appropriate line-up.

██ In this case, however, the Government was given an "opportunity to establish by clear and convincing evidence that the in-court identification [was] based upon observation of the suspect other than the line-up identification." Wade, supra at 240. In the pre-trial examination of the complainant, it was established that Asjernesen stood face to face with the defendant for some moments before and during the crime and that he had consistently identified the defendant on the only prior occasion that he saw defendant before trial. During the trial, the pre-identification description given by Asjernesen to the police was placed in the record and it accorded generally with the description of the defendant when he was arrested.[5] While Asjernesen was confused whether he *identified* the defendant at the police station spontaneously or at the prompting of the police, he did testify that he *recognized* the defendant as the robber immediately when he saw him. Both during direct and cross-examination, Asjernesen declared he presently recognized the defendant because he remembered the defendant's appearance from the time of the robbery. Cf. Sutton v. United States, 434 F.2d 462, 467 (D.C. Cir. 1970). Under all the circumstances of this case, the District Court was correct in finding that Asjernesen's in-court identification of defendant "had an independent source" and was not arrived at by exploitation of the station house confrontation. Cf. Gregory v. United States, 410 F.2d 1016 (D.C. Cir. 1969).

---

[5] A police officer testified at trial that defendant was wearing pink clothes and white shoes, and that he had thick lips. While defendant's height and weight were somewhat greater than described by Asjernesen, that variation, alone, is not determinative of the independence of his in-court identification. See Wade, supra, at 241.

Accordingly, the judgment of the District Court will be affirmed.