The **UNITED STATES** of America
v.
**Tyrone Alexander SAVAGE.**
**Cr. No. 70–162.**

United States District Court,
E. D. Pennsylvania.
Aug. 20, 1971.

Julius E. Fioravanti, Philadelphia, Pa., Defense Atty., for Tyrone A. Savage.

Jeffrey M. Miller, Asst. U. S. Atty., Philadelphia, Pa., Government Atty., for the United States.

## OPINION AND ORDER

HANNUM, District Judge.

Presently before the court are defendant's motions for new trial and judgment of acquittal. On October 30, 1970, the defendant was convicted by a jury of bank robbery in violation of 18 U.S.C. § 2113(a), (b) and (d). Very able and skillful defense counsel has advanced numerous reasons in support of the motions. The court has reviewed the entire record and will address itself only to those which require some discussion or clarification.

### I *Insufficiency of the Evidence*

On January 21, 1970, at approximately 11:55 a. m., four Afro-American males entered and robbed the Central Penn National Bank at Broad and Glenwood Streets in Philadelphia. As the robbers fled, a bank employee observed them enter a certain automobile and recorded its license plate number. An alert containing a description of the vehicle and its occupants and the license plate number was immediately broadcast over police radio. A few minutes later a Philadelphia police officer who was proceeding to the bank in his squad car observed the vehicle in question and after verifying the license plate number, gave chase. Shortly thereafter, the vehicle containing the four men collided with a pole and three of the occupants fled. The police officer apprehended the defendant as he too was attempting to es-

cape from the car. At the time of his arrest, the defendant was carrying a loaded sawed-off shot gun and a bag containing the money that was taken from the bank.

Also, during the trial, three bank employees identified the defendant as a participant in the robbery. Finally, a Special Agent of the F.B.I. testified that during custodial interrogation, the defendant orally admitted his participation in the bank robbery to him.

In light of the foregoing facts, it is clear that the evidence was not only sufficient but also overwhelming.

## II  *Voluntariness of the Oral Confession*

■ After his arrest, the defendant was interviewed by Special Agents of the Federal Bureau of Investigation on three separate occasions. On each occasion prior to the commencement of questioning, he was fully advised of and fully understood his constitutional rights. Although he did not desire to sign the formal waiver of rights form, he indicated that he would be willing to orally answer questions. At the first interview he denied his participation in the robbery. But, at the second and third interviews, the defendant admitted his participation and discussed the identity of his co-participants.

At the pre-trial suppression hearing, the court found the testimony of the F.B.I. agents credible and found as a fact that the oral statement was both knowingly and voluntarily made. Accordingly it was admitted against the defendant at trial.

## III  *Failure to Suppress Identification Testimony*

■ After his apprehension by the Philadelphia Police, the defendant was transported to the East Detective Division Headquarters for processing. Thereafter, within approximately one-half hour of the bank robbery, the police returned the defendant to the bank. The evidence indicated that at least one of the bank employees who identified the defendant at trial was present in the bank at the time of his return. He testified that the defendant was present at that time for approximately five to ten minutes and when asked if the defendant was one of the bank robbers, he stated that he was not absolutely positive but that he appeared to be.

The defendant contends that his return to the bank within one-half hour of the robbery without the presence of counsel was an illegal line-up.

Since it is clear from the record that the defendant was returned to the scene of the crime within thirty minutes of its commission, any on-the-scene identifications made at that time were lawful. Government of the Virgin Islands v. Callwood, 440 F.2d 1206 (3d Cir. 1971); Russell v. United States, 133 U.S.App. D.C. 77, 408 F.2d 1280 (1969).

## IV  *Impeachment of the Defendant with an Invalid Prior Conviction*

■ Immediately after the defendant's direct testimony, the Assistant United States Attorney approached the bench and informed the court that he intended to impeach the defendant's credibility by cross examining him with respect to a prior conviction for rape in 1963. The Assistant United States Attorney produced a certified copy of the conviction which he had obtained on October 7, 1970, from the Prothonotary of the Court of Common Pleas, Criminal Division, of Philadelphia County. The court indicated that it would not require defense counsel to make a preliminary statement at that time but that should there be an objection after the question was propounded, it would then be ruled upon. Defense counsel did object at the appropriate time but failed to state the basis for his objection. As such, the court only had before it the certified copy of the prior conviction which had been obtained shortly prior to the commencement of trial, and accordingly, the unsupported objection was overruled. It was subsequently developed that the certified copy of the defendant's prior con-

viction was incomplete, that his conviction had been vacated, that he had been awarded a new trial and that on October 9, 1970, the Honorable Herbert Levin of the Philadelphia Court of Common Pleas had granted the unopposed motion of the Philadelphia District Attorney to nolle pros the indictment.

Upon verifying this information, the court appropriately instructed the jury and ordered the testimony stricken from the record. (N.T. 557). In addition, in its charge to the jury the court instructed the jury to completely disregard any evidence that had been ordered stricken. (N.T. 660).

The record clearly reveals that there was no bad faith on the part of the prosecutor. He acted in reliance upon a presumptively correct certified copy of defendant's prior conviction which he had obtained on October 7, 1970, and which did not indicate any post-conviction proceedings as to the defendant. In addition, it was incumbent upon defense counsel to specifically state the basis of his objection to the question so that the court could properly ascertain outside of the presence of the jury the appropriateness of that line of questioning.

To permit defense counsel to simply object without specifically stating a known basis sufficient to sustain his objection, or at least to require further inquiry out of the jury's presence, would be unfair to both his client and the government and would open the door to countless mistrials. Accordingly, the court denied defense counsel's motion for a mistrial. See Walker v. United States, 124 U.S.App.D.C. 194, 363 F.2d 681 (1966); Covington v. United States, 125 U.S.App.D.C. 224, 370 F.2d 246, 247 (1966).

In addition, while the use of an invalid prior conviction on cross examination for impeachment purposes has been held to be error, Gilday v. Scafati, 428 F.2d 1027 (1st Cir. 1970), the court is convinced in this case where the evidence of guilt was overwhelming and the defendant's testimony had been successfully impeached by prior inconsistent statements made to the Federal Bureau of Investigation, the error was harmless beyond a reasonable doubt. Tucker v. United States, 431 F.2d 1292 (9th Cir. 1970).

Accordingly, the court concludes that the defendant received a fair trial, United States v. Chicarelli, 445 F.2d 111 (3d Cir. 1971), and denies the post trial motions.