**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Roy C. FAULKNER, Defendant-Appellant.**

**No. 25382.**

United States Court of Appeals,
Ninth Circuit.

Aug. 25, 1971.

John H. Colteaux (argued), Ackeret & Colteaux, San Rafael, Cal., for defendant-appellant.

John G. Milano, Asst. U. S. Atty. (argued), James L. Browning, U. S. Atty., Coleman Bresse, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before KOELSCH and TRASK, Circuit Judges, and BYRNE,* District Judge.

TRASK, Circuit Judge:

This is an appeal from a conviction, following a jury trial, on all seven counts of an indictment charging violations of 18 U.S.C. § 500 (Forging, Passing and Uttering Postal Money Orders).[1] Counts 1, 3, 4, 5, 6, and 7

---

*Honorable William M. Byrne, Senior Judge, United States District Court for the Central District of California, sitting by designation.

1. 18 U.S.C. § 500 provides in pertinent part:

> \* \* \* \* \*
>
> "Whoever forges or counterfeits the signature of any postmaster, assistant postmaster, chief clerk, or clerk, upon or to any money order, or postal note, or blank therefor provided or issued by or under the direction of the Post Office Department of the United States, or any foreign country, and payable in the United States, or any material signature or indorsement thereon, or any material signature to any receipt or certificate of identification thereof; or
>
> \* \* \* \* \*
>
> "Whoever, with intent to defraud, passes, utters or publishes, any such forged or altered money order or postal note, knowing any material signature or indorsement thereon to be false, forged, or counterfeited, or any material alteration therein to have been falsely made;
>
> \* \* \* \* \*

each charged appellant with forging the signature and endorsement of the purported payee on the reverse side of six different postal money orders provided by the Post Office Department of the United States. Counts 3 and 4 also charged appellant with forging the material signature of the purported purchaser on the money orders described in those two counts. Count 2 charged appellant with passing and uttering the money order described in Count 1 with knowledge that the endorsement thereon was false. Appellant received concurrent three-year sentences on all counts.

■ Appellant contends that the government failed to prove beyond a reasonable doubt that the money orders in question were provided by or under the direction of the Post Office Department of the United States.[2] This contention is without merit. Mrs. Dorothy Hawley, a postmaster with twenty-four years of experience, testified on cross-examination that to her they looked like valid postal money orders.[3] She also testified that the particular money orders involved herein had been listed as lost or stolen by the Money Order Division of the General Accounting Office.[4] No objection as to the authenticity of the money order blanks was raised at the time they were introduced into evidence. With this evidence the government had presented a prima facie showing from which the jury could have found beyond

a reasonable doubt that the money orders originally had been provided by the Post Office Department. If appellant wished to rebut this showing by suggesting that the money orders were counterfeits, rather than forgeries, he was obligated to come forward and do so.

■ Appellant also challenges the constitutionality of pretrial photo show-ups at which his picture was identified by two eyewitnesses as being that of the person who passed the forged money orders underlying Counts 1, 2 and 7. He claims that he had a right to have counsel present on those occasions. This issue has been decided contrary to appellant's position by this court. Allen v. Rhay, 431 F.2d 1160 (9th Cir. 1970). See also United States v. Williams, 436 F.2d 1166 (9th Cir. 1970); United States v. Roustio, 435 F.2d 923 (9th Cir. 1970); United States v. Goetluck, 433 F.2d 971 (9th Cir. 1970); United States v. Edwards, 433 F.2d 357 (9th Cir. 1970).

■ He also claims that the photographic identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S. Ct. 967, 971, 19 L.Ed.2d 1247 (1968). This likelihood of misidentification as to Counts 1, 2 and 7, he argues, tainted the jurors' minds as to all seven counts.

---

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both."

2. It was established that the money orders, carrying an issuing stamp from the Conifer, Colorado, Post Office, had not, in fact, been validly "issued" by that office. R.T. 24–25. The post office had been the victim of a previous burglary in which the safe, containing blank money orders, the records relating to the money orders, and the dating and limitation stamps for issuing money orders, was stolen. Thus, the question posed by appellant is whether the money order blanks carrying the forgeries charged in the indictment were "provided" by the Post Office Department, or merely counterfeits for which appellant was not charged.

3. We have also examined the money orders (Government's Exhibits 1–6) and find no apparent irregularity which would cast doubt on the legitimacy of their origin.

4. This was obviously a hearsay statement and not the best evidence of the matter asserted. However, no objection was made at trial and consequently, it constitutes competent evidence if it is probative. See, e. g., N.L.R.B. v. Int. Union of Oper. Engrs., Local Union No. 12, 413 F.2d 705, 707 (9th Cir. 1969); Pearson v. Dennison, 353 F.2d 24, 29 n. 10 (9th Cir. 1965). The probative value is clear. It would be unlikely that the General Accounting Office would have a record of lost or stolen money orders which were counterfeits not "provided" by the Post Office Department.

Appellant relies primarily on the fact that only his photo, in a photo spread containing several other mug shots of black males, carried the inscription "Denver Police Department." This fact is asserted as critical because both eyewitnesses indicated that they knew that the money orders or the man cashing them came from Denver, Colorado.[5]

We have examined the photos and the testimony at trial, and we are convinced that there was no substantial likelihood of misidentification resulting from the challenged photo showup. Each witness had an excellent opportunity to observe the person who cashed the money orders. The photo identifications were made relatively soon after the passing of the forged instruments. In all other respects, the photo spread was lacking in the slightest hint of suggestibility. At trial, positive unequivocal identifications were made by both eyewitnesses. With respect to one witness, the danger of a conviction based on a misidentification was "substantially lessened by a course of cross-examination at trial which expos[ed] to the jury the method's potential for error." *Id.* As for the other witness, his testimony on voir dire out of the presence of the jury indicates very persuasively that he could positively identify appellant for reasons totally unrelated to anything peculiar about the challenged photographs.

■ Even assuming, *arguendo*, that the photographic showing was impermissibly suggestive, there was overwhelming additional evidence which linked appellant to the crimes charged. Positive identifications of appellant's fingerprints were found on two of the forged money orders. Positive identifications of appellant's handwriting were made on all six of the forged money orders. Appellant's thumbprint, handwriting and picture were all positively identified on an identification card which he sought in the name of the purported payee of the forged money orders. Thus, any suggestiveness that resulted from the photo showup was clearly harmless beyond a reasonable doubt. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The conviction is affirmed.

---

5. One eyewitness recalled, during extensive voir dire out of the jury's presence, that he knew that the money order he cashed came from Denver, Colorado. At this point, although attempting to determine the effect of the photo showup on the accuracy of the witness' identification, trial counsel was unaware of the allegedly suggestive inscription on appellant's mug shot and consequently directed no questions to this point either on voir dire or later on cross-examination.

The other eyewitness testified on cross-examination that the investigating officer who showed her the photographs had told her that money orders stolen from a small post office in Colorado had shown up at various stores in the area. She also recalled that the suspect had stated, at the time he cashed the money order, that he worked for a railroad out of Denver as a porter. She indicated that she had failed to make a positive identification of appellant at that time. She did not recall having seen the allegedly suggestive inscription on appellant's mug shot.