UNITED STATES OF AMERICA

v.

MOSES LEWIS, Appellant

No. 71-1202

United States Court of Appeals

Third Circuit

Argued at Charlotte Amalie, St. Thomas

January 26, 1972

Decided March 7, 1972

ALBERT A. SHEEN, ESQ. (c/o HODGE & SHEEN), Christiansted, St. Croix, V.I., *for appellant*

FREDERICK G. WATTS, ESQ., Assistant United States Attorney, St. Thomas, V.I., *for appellee*

Before SEITZ, *Chief Judge*, ALDISERT and GIBBONS, *Circuit Judges*

OPINION OF THE COURT

ALDISERT, *Circuit Judge*

This appeal from a judgment of conviction of bank robbery, in violation of 18 U.S.C. § 2113(a) and § 2113(d), presents evidentiary and jurisdictional questions and challenges the legality of the in-court identifications of appellant upon which the conviction was based.

On April 23, 1970, three armed men entered the Fort Mylner Branch of the Virgin Islands National Bank and, at gun point, took $36,255.00. Appellant was arrested and charged with bank robbery in two counts on May 20, 1970. A photographic array was presented to one witness the next day. He could make no positive identification. The same array was shown to a second witness on June 1, 1970, and again no identification was made. On June 25, 1970, a line-up was held by court order. Counsel for appellant was present, and he participated in the selection of the ten persons displayed in the line-up. When the witnesses to the line-up made their identifications and were questioned by the government, however, counsel was excluded. A trial of appellant and two co-defendants resulted in a hung jury. Appellant was retried and the jury returned a verdict of guilty on both counts on December 5, 1970. This appeal followed.

To mitigate the impact of three positive eyewitness identifications at trial, appellant forges a challenge predicated on United States v. Wade, 388 U.S. 218 (1967), and United States v. Zeiler, 427 F.2d 1305, 1307 (3d Cir. 1970), in which this court held that "[t]he considerations that led the court in Wade to guarantee the right of counsel at lineups apply equally to photographic identifications conducted after the defendant is in custody." For several

502

reasons, however, appellant's reliance on Zeiler is misplaced.

■ No testimony was adduced relating to the photographic examinations. Indeed, no photographic identification was made by any witness. Appellant argues that this is of no moment, "because the Wade decision was aimed solely at nullifying any chance for suggestiveness." But the inability of eyewitnesses to make an identification from the photographic display belies any notion of suggestiveness. Moreover, it is only when a pre-trial identification has been made that concern is generated because "[a] witness once induced by such a suggestive confrontation into making a mistaken identification is extremely unlikely later to change his mind." Zeiler, supra, 427 F.2d at 1306–7. The admission of a photographic identification as substantive evidence of guilt is a sine qua non of a Wade-Zeiler claim. Thus, Zeiler may be distinguished on the very two grounds on which constitutional error was there found: photographic identification in the absence of counsel and testimony to that effect at trial. Zeiler, supra, 427 F.2d at 1307.[1] In any event, the trial court expressly found that "on examination of the 18 photographs I find no such suggestiveness as the record in Zeiler indicates."

■ Similarly, the court-ordered line-up was expressly found by the district court to be devoid of any suggestiveness. Nonetheless, the court excluded any evidentiary reference to the line-up. Out of exceptional caution, Judge Christian ruled that despite the absence of suggestiveness and the presence of counsel both at the time of participant selection[2] and during the line-up itself, the failure by the

---

[1] The photographic displays in this case took place a few days prior to this court's decision in Zeiler. Because we perceive no Zeiler issue to be present, however, we need not reach the question of Zeiler's retroactivity.

[2] Wade does not require active participation by defense counsel in the line-up proceedings, although counsel acquiesced in the selection of participants here. See United States v. Ewing, 446 F.2d 60, 61 (9th Cir. 1971).

government to permit counsel's presence when the viewers made their identifications rendered inadmissible all identification testimony based on the line-up. In so doing, Judge Christian noted that no objection to the line-up had been posed, and that his rejection of the proffered identification evidence came from the spirit, rather than the letter, of Wade.[3] See Government of the Virgin Islands v. Callwood, 440 F.2d 1206, 1208 (3d Cir. 1971).

So postured, the government's proof of identification was thus made subject to the formidable standard enunciated in Wade: the Government must be given "the opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification." Wade, supra, 388 U.S. at 240. Government of the Virgin Islands v. Callwood, supra, 440 F.2d at 1209. This standard, characterized by Judge Christian as a "heavy burden," was deemed by the trial court, after an exhaustive hearing out of the jury's presence,[4] to have been met by the govern-

---

[3] The court held:

> In this case the Government's agents instructed the identifying witnesses that they should write on a pad given them with a pencil the numbers of the persons whom they identified, if indeed they made any positive identification. It appears that at least three of those witnesses did. The identifying witnesses were then taken by the Government agents to another room where at that time the Government agents had revealed to them whatever, if anything, had been written on the pads by the identifying witness or witnesses. At the line-up and in the room with the identifying witnesses counsel for the defendants were present. In the room to which the witnesses were taken, when it was for the first time disclosed what persons, if any, they had identified, not only were counsel for the defendants not present, they were expressly barred by the Government agents. This I find to be incompatible with the doctrine that a defendant placed in a line-up is entitled to the presence of counsel throughout.

[4] This was the same procedure for which we ordered remand in Zeiler, supra, 427 F.2d at 1309, and for which we have recently articulated guidelines. United States v. Zeiler, 447 F.2d 993, 995 (3d Cir. 1971) (Zeiler II). Such a hearing, to implement the mandate of Wade, has received the imprimatur of other circuits as well. United States v. Breaux, 450 F.2d 948, 949 (9th Cir. 1971); United States v. Hinkle, 448 F.2d 1157, 1159 (D.C. Cir. 1971); United States v. Morris, 445 F.2d 1233, 1237 (8th Cir. 1971); Kimbrough v. Cox, 444 F.2d 8, 11 (4th Cir. 1971). See also, United States v. Patterson, 447 F.2d 424, 427 (10th Cir. 1971); United States v. Faulkner, 447 F.2d 869, 871 (9th Cir. 1971).

ment. The finding was based on the court's evaluation of the potential witnesses' credibility.[5]

■ Assuming, without deciding, that the government was properly put to the "clear and convincing evidence" standard in adducing its identification testimony, we must agree with Judge Christian that the in-court identifications of all three witnesses were free from any possible taint.[6]

---

[5] The court ruled:

> The ruling of Wade requires that in these circumstances the Government must show by clear and convincing proof that any in-court identification will not be the tainted product of the line-up. The phrase clear and convincing proof is far more easily uttered than applied. In the circumstances of this case, this Court has nothing on which it could make such a finding, other than the testimony of the witnesses themselves, and the circumstances of all attempts to have them identify these defendants. The witnesses Quetel, Wells, and Bancroft, all three of whom have testified that they can at this time make in-court identifications, all three of whom made accurate in-court identifications at a previous trial of this case, have stated that their recognition of these defendants will be as it was in the past trial, based solely on their recall of the events that took place in the bank on the 23rd of April 1970. They have testified to this in a manner that satisfies the Court that they are credible witnesses. There is nothing at all in their testimony or in the circumstances of this case to suggest to this Court that an in-court identification by any of these three witnesses would be tainted by any prior act of any Government agent. Accordingly, these witnesses will be permitted to make an in-court identification of these defendants, if they are able to do so.

[6] At trial, when asked to indicate which of the defendants he had just identified, witness Bancroft responded, "He is the man I identified at the lineup and he is the man that was in the bank." Appellant urges that this is express evidence of the inability of the witness to establish an independent origin for his identification. But at the hearing prior to Bancroft's testimony before the jury, the following colloquy took place:

> Q. Mr. Bancroft, can you identify one of the bank robbers at this time? I'm not asking you to identify him.
> A. Yes, I could.
> Q. Tell His Honor what the basis for your identification of that bank robber is.
> A. Well, my basis for identifying the person would be his features, his size, his weight, his age, color of his skin.
> Q. And your observation of him as of when?
> A. The day of the robbery.

Thus, at the hearing at which the court determined the presence vel non of an independent origin for the identification, there was no doubt that Bancroft's testimony sprang from his observations at the scene of the robbery. That he noted in his testimony that his identification was the same as that which he made at the time of the lineup in no way detracts from its reliability. Any prior identifications notwithstanding, it is clear from the record that Bancroft's *recognition* of appellant stemmed from the time of the robbery. See Government of the Virgin Islands v. Callwood, supra, 440 F.2d at 1209–10.

Thus, while we need intimate no view toward the necessity of excluding the line-up identification testimony, we hold that the in-court identification testimony was properly admitted for the jury's consideration.

Appellant argues next that the admission of a bag containing $90.00, allegedly found in an area into which the robbers were alleged to have fled, created reversible error. Although the bag and the money were admitted at the outset of the trial, defense counsel objected on the ground of irrelevancy. At the close of trial, the court reversed itself and excluded the money and bag because the prosecution had failed to establish a connection relevant to the robbery. Thus, appellant contends that the display of this evidence before the jury "had a prejudicial effect" because "[t]he jury had, from the time of admittance of this evidence, some four (4) days to ponder and consider this evidence in relation to the crime and the rest of the evidence brought before the court."

■ No argument is presented suggesting any way in which appellant was actually prejudiced. Indeed, if the temporary presence of this evidence had any effect on the jury at all, in light of the trial court's thorough instruction on this point, it may have been to cast the government's case in an unnecessarily weak light:

It was testified that about $90 worth of U.S. currency was found and it was displayed before you. I have stricken it from the record. It is now no longer a part of the case and you are to disregard it entirely. The same applies to a paper bag that I at one time admitted into evidence. I have now reversed that ruling and it is no longer to be considered by you. I have taken this step because there is not sufficient connection between that $90 and any money shown to have been taken from the bank. There is no connection between that paper bag and any paper bag to which it was testified the alleged bank robbers held in hand. Therefore, you are to disregard those items completely.

Assuming the propriety of the ruling which struck this evidence, we find no error here.

■ Finally, appellant contends that the Virgin Islands District Court, because it is a legislative, rather than constitutional court, lacked the power under 18 U.S.C. § 2514 to grant immunity to a witness who testified for the government. § 2514 vests such power only in "court[s] of the United States." § 22 of the Revised Organic Act of the Virgin Islands (48 U.S.C. § 1612) states that "[t]he District Court of the Virgin Islands shall have the jurisdiction of a district court of the United States in all causes arising under the Constitution, treaties and laws of the United States. . . ." Yet "vesting a territorial court with jurisdiction similar to that vested in the District Court of the United States does not make it a 'District Court of the United States.' " Mookini v. United States, 303 U.S. 201, 205 (1938).[7] See also, Hendricks v. Alcoa Steamship Co., 206 F.Supp. 693, 696 (E. D. Pa. 1962). Thus, a territorial court may be a "court of the United States" for some purposes, but not for others. Compare Talbot v. McCarrey, 218 F.2d 565, 566 (9th Cir. 1955) with International Longshoremen v. Juneau Spruce Corp., 342 U.S. 237 (1952).[8]

---

[7] Mookini thus held the Criminal Appeals Rules inapplicable to territorial courts. The Federal Rules of Criminal Procedure expressly apply to the District Court of the Virgin Islands, Rule 54(a), F.R.Cr.P. See also, Government of the Virgin Islands v. Solis, 334 F.2d 517, 519–20 (3d Cir. 1964); 3 Wright, FEDERAL PRACTICE AND PROCEDURE § 872.

[8] Though the Mookini definition of district courts, which excluded territorial courts, has now been largely supplanted by a broader statutory definition, 28 U.S.C. § 451, the Virgin Islands District Court remains without the statute: "The term 'court of the United States' includes . . . any court created by Act of Congress *the judges of which are entitled to hold office during good behavior.*" (Emphasis supplied.) Judges of the Virgin Islands District Court serve eight-year terms. 48 U.S.C. § 1614(a). Thus, although we have held the Jencks Act, Government of the Virgin Islands v. Lowell, 378 F.2d 799, 805 (3d Cir. 1967), and the Bail Reform Act, Government of the Virgin Islands v. Ortiz, 427 F.2d 1043, 1046 (3d Cir. 1970), applicable to prosecutions in the Virgin Islands, while denying applicability of the constitutional right to a grand jury indictment before trial on a capital or infamous crime, Rivera v. Government of the Virgin Islands, 375 F.2d 988, 990 (3d Cir. 1967), statutory powers granted to "court[s] of the United States" are not automatically applicable to the Virgin Islands. See also, Ottley v. DeJongh, 149 F.Supp. 75, 77 (D.V.I. 1957).

Although the district court found the authority conferred by § 2514 to be an implementary power implicit in the jurisdictional mandate of the Revised Organic Act, we find ourselves precluded from resolving this troublesome issue. We are persuaded that appellant does not have standing to challenge the grant of immunity to the witness.

In Bowman v. United States, 350 F.2d 913, 915 (9th Cir. 1965), the court found that in light of the Supreme Court's decision in Murphy v. Waterfront Commission, 378 U.S. 52 (1964), the trial court had erred in overruling a claim of privilege against self-incrimination asserted by witnesses called by the government to testify against defendant. The court then held:

> This, however, does not entitle Bowman to a reversal. It has long been settled that the privilege against self-incrimination is personal to the witness. (Hale v. Henkel, 1906, 201 U.S. 43; McAlister v. Henkel, 201 U.S. 90; United States v. Murdock, [284 U.S. 141]; United States v. White, 1944, 322 U.S. 694; Rogers v. United States, 1951, 340 U.S. 367; Communist Party of United States v. Subversive Activities Control Board, 1961, 367 U.S. 1.)

Thus, the court concluded:

> It makes no difference, we think, that the two witnesses did attempt to assert the privilege and that the court erroneously overruled their claim of privilege. *Where the witness is not the party, the party may not claim the privilege nor take advantage of an error of the court in overruling it.* On this point the authorities are practically unanimous. (Citations omitted and emphasis supplied.)

Bowman, supra, 350 U.S. at 916.

■ The challenge to the admission of witness Parson's testimony on the ground that the court erroneously granted him immunity is on no firmer footing than would be an objection to evidence seized in violation of Parson's Fourth Amendment rights. See Alderman v. United States, 394 U.S. 165, 174 (1969):

508

We adhere to these cases and to the general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. Simmons v. United States, 390 U.S. 377 (1968); Jones v. United States, 362 U.S. 257 (1960); Compare Titleston v. Ullman, 318 U.S. 44, 46 (1943).[9]

Constitutional considerations aside, moreover, cogent policy reasons underscore the concept of minimizing challenges to relevant testimony. As Judge Gibbons noted in In re: Grand Jury Proceedings, 450 F.2d 199, 222–3 (3d Cir. 1971) (dissenting opinion):

[I]t has been recognized for at least three centuries that the public has the right to every person's testimony. Every witness privilege is seriously in derogation of a general and fundamental duty. United States v. Bryan, 339 U.S. 323, 333, 70 S.Ct. 724, 94 L.Ed. 884 (1950); Blackmer v. United States, 284 U.S. 421, 438, 52 S.Ct. 252, 76 L.Ed. 375 (1932); Blair v. United States, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1919)....

Next, we must keep before us the nature of the American judicial process. It resolves cases and controversies in an adversary setting. It does not have machinery for righting all wrongs which may surface in any given case or controversy. Determination of the rights of third parties inevitably interrupts, delays and confuses the primary litigation....

. . . Speaking of the less drastic step of an exclusionary rule to which a party may resort, Justice Frankfurter wrote:

"Any claim for the exclusion of evidence logically relevant in criminal prosecutions is heavily handicapped. It must be justified by an over-riding public policy expressed in the Constitution or the law of the land." Nardone v. United States, 308 U.S. 338, 340, 60 S.Ct. 266, 267, 84 L.Ed. 307 (1939).

We hold, therefore, that appellant has no standing to contest the propriety of the grant of immunity to a witness

---

[9] The Court in Alderman continued:

There is no necessity to exclude evidence against one defendant in order to protect the rights of another. No rights of the victim of an illegal search are at stake when evidence is offered against some other party. The victim can and very probably will object for himself when, as and if it becomes important for him to do so.

Alderman, supra, 394 U.S. at 174.

who testified against him. United States v. Le Pera, 443 F.2d.810, 812 (9th Cir. 1971); Long v. United States, 360 F.2d 829, 834 (D.C. Cir. 1966); United States ex. rel. Berberian v. Cliff, 300 F.Supp. 8, 14 (E.D. Pa. 1969). Cf., Ellis v. United States, 416 F.2d 791, 799 (D.C. Cir. 1969).

The judgment of conviction will be affirmed.