**JULIO ORTIZ GARCIA, Appellant**
**v.**
**GOVERNMENT OF THE V.I., Appellee**

D.C. Crim. App. No. 2005/018

District Court of the Virgin Islands

Division of St. Croix

September 25, 2006

531

ERIC S. CHANCELLOR, ESQ., St. Croix, U.S.V.I., *For Appellant.*

MAUREEN PHELAN, AAG, St. Thomas, U.S.V.I., *For Appellee.*

GOMEZ, *Chief Judge, District Court of the Virgin Islands;* FINCH, *Judge of the District Court of the Virgin Islands;* and HODGE, *Judge of the Superior Court of the Virgin Islands, Sitting by Designation.*

## MEMORANDUM OPINION

(September 25, 2006)

Julio Ortiz Garcia ("Garcia" or "appellant") was convicted in Superior Court of two counts of rape first degree, attempted rape first degree, unlawful sexual contact first degree, kidnapping for rape, and two counts of child abuse. Garcia now argues on appeal that:

1) The trial court erred in denying his motion to suppress his out of court and in-court identification;

2) The sentence imposed violated both the Eighth Amendment's prohibition against cruel and unusual punishment and the Fifth Amendment's protections against double jeopardy.

Having considered the parties' arguments and the relevant authorities thereto, we affirm the appellant's conviction and sentence.

## I. STATEMENT OF FACTS & PROCEDURAL POSTURE

The charges against the appellant stemmed from a kidnapping and rape of a 13-year old girl in Frederiksted on July 13, 2002.

The girl was abducted from the driveway of her home in Estate William's Delight sometime after 6 p.m., when she went to retrieve items from her mother's car. As she opened the door of the vehicle, the appellant, whom she recognized as her next-door neighbor, approached and asked her to give him a ride. When she refused, explaining she was too young to drive, she said the appellant produced a knife and forced her to drive the vehicle out of the area. As they drove, the appellant told the victim he was going to have sex with her. After driving a short distance,

the appellant had the victim stop the car, and he resumed driving, while she sat in the passenger's seat.

The victim was taken to a deserted area in Estate Cane Valley, after an estimated 15-minute drive. There, she said her attacker touched her genital area, and forced her head down onto his penis, ejaculating into her mouth. Thereafter, her attacker forced her to remove all her clothing and attempted to have vaginal intercourse with her, as she lay in the passenger seat, but he was unable to successfully penetrate her. During these attacks, the victim testified the car door was open and the interior lights remained on. Her attacker then took her out of the vehicle and, leaning her against the car, again unsuccessfully attempted to penetrate her. Another similar attack followed on the ground behind the car.

The girl was able to escape when she convinced the attacker that she had to urinate and convinced him to wait in the back seat of the vehicle. As he did so, the girl grabbed the knife from the front of the car and fled the area without her clothing. As she ran, she came upon an abandoned house, where she dropped the knife. After running for some time, the victim then came upon an occupied house, where she obtained help.

The occupants of that house noted that the girl was hysterical and kept spitting, and also told them her attacker had ejaculated into her mouth.

Police were immediately contacted, and the victim was able to provide a description of her attacker, including his clothing and physical characteristics. That description was disseminated by police radio. Within minutes, K-9 Police Officer Frankie Ortiz responded to the scene of the crime and, along with his dog, quickly discovered first the victim's car and then the appellant, who was crouched under the brush. The appellant's description matched the description that had been disseminated to police. The appellant was then placed, handcuffed, in the back of an unmarked police vehicle and driven by Police Detective Lydia Figueroa to the area where the victim had sought help. As the victim was being taken from her home to an ambulance, she was shown the appellant seated in the unmarked police vehicle. The victim identified Garcia as her attacker.

Garcia was charged with attempted rape first degree (Count 1); two counts of first degree rape (Counts 2 and 3); unlawful sexual contact first degree (Count 4); kidnapping for rape (Count 5); and two counts of child abuse (Counts 6 and 7). He was convicted by jury and sentenced as follows: 25 years imprisonment on Count 1, 99 years imprisonment for

533

two counts of rape in the first degree (counts 2 and 3), and 25 years for unlawful sexual contact first degree (count 4), all to be served concurrently. [Judgment and Commitment, App. at 1-2]. The trial court determined that counts one through four should be merged for the purpose of sentencing. Garcia was additionally sentenced to 99 years imprisonment for his conviction of kidnapping for rape (count 5), to run consecutively with the sentences for counts 1-4. Finally, he was sentenced, for Counts 6 and 7, to a term of 20 years imprisonment, to be served concurrently with count 5. This timely appeal followed.

## II. DISCUSSION

### A. Jurisdiction and Standards of Review

We exercise jurisdiction to review the final judgment in this criminal matter, under our authority provided in The Omnibus Justice Act of 2005, Act No. 6730, § 54 (amending Act No. 6687 (2004), which repealed 4 V.I.C. §§ 33-40, and reinstating appellate jurisdiction provisions), and Revised Organic Act of 1954 § 23A, 48 U.S.C. § 1613a.[1]

We review *de novo* questions of law, issues implicating rights protected under the U.S. Constitution, and the interpretation of statute. However, we afford the more deferential clear error review to factual determinations. *See Gov't of V.I. v. Albert*, 89 F. Supp. 2d 658, 663, 42 V.I. 184 (D.V.I. App. Div. 2001).

■ Decisions denying motions to suppress evidence are reviewed for clear error with respect to the court's underlying factual findings, although the court's application of the law to those facts is entitled to plenary review. *See United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002); *see also, Gov't of V.I. v. Petersen*, 131 F. Supp. 2d 707, 710 (D.V.I. App. Div. 2001). However, where, as here, there are no factual findings evident on the record, as required by FED. R. CRIM. P. 12(d), we may uphold the trial court's denial of a motion to suppress if there is any reasonable view of the evidence to support it. *See Gov't of V.I. v. Graham*, 47 V.I. 485 (D.V.I. App. Div. 2005) (citing *Scarbeck v. United States*, 115 U.S. App. D.C. 135, 317 F.2d 546, 562 (D.C. Cir. 1963);

---

[1] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2003), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

*United States v. Belle*, 593 F.2d 487, 497 (3d Cir. 1979) (noting that while appellate court would ordinarily remand for initial probable cause determination, it could decide the issue where the record is sufficient for that determination to be made)); *compare, United States v. Sebetich*, 776 F.2d 412, 424 (3d Cir. 1985) (noting that, absent factual findings, court of appeals reviewed record to determine whether denial of motion to suppress was clearly erroneous).

## B. Whether The Trial Court Erred in Denying Appellant's Motion to Suppress Identification Evidence.

Garcia contends the showup at the scene of the crime was improper and also improperly tainted the later in-court identification.

■ Showup identifications are not *per se* unconstitutional. *See Neil v. Biggers*, 409 U.S. 188, 196-98, 93 S. Ct. 375, 34 L. Ed. 2d 401(1972). Indeed, courts have consistently acknowledged the necessity and prudence in utilizing showups under certain circumstances, despite their inherent suggestibility. *See Stovall v. Denno*, 388 U.S. 293, 301-02, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967) (showup in victim's hospital room necessary under circumstances and not unconstitutional); *Biggers*, 409 U.S. at 196-98; *United States v. Savage*, 470 F.2d 948, 949-50(3d Cir. 1972) (upholding procedure where suspected bank robber taken back to the bank for identification by witnesses immediately after robbery and capture, and noting that on-the-scene confrontations shortly following a crime have consistently been upheld by the courts) (citing *United States v. Gaines*, 450 F.2d 186 (3d Cir. 1971); *Gov't of V.I. v. Callwood*, 440 F.2d 1206, 1209, 8 V.I. 349 (3d Cir. 1971) (recognizing the acceptance of on-the-scene showups made soon after the crime at the crime scene, based on the rationale that such procedures are oftimes desirable to prevent an innocent person from being unnecessarily held in jail, because the witness' identification will be more accurate at that time, and because of the need to enable the police to continue the search immediately, while the culprit may still be in the vicinity, in the event they have apprehended the wrong person).

■ However, as this circuit and other circuits have noted, such showup identifications are most useful and primarily upheld only where the showup occurs on the scene and close in time to the crime. See *Savage*, 470 F.2d at 949-50; *Callwood*, 440 F.2d at 1209; *Vazquez v. Rossnagle*, 163 F. Supp. 2d 494, 498 (E.D. Pa. 2001) (upholding showup

535

immediately following shooting incident); *see also United States v. Funches*, 84 F.3d 249, 254 (7th Cir. 1996); *Johnson v. Dugger*, 817 F.2d 726, 729 (11th Cir. 1987); *United States v. Watson*, 76 F.3d 4, 6 (1st Cir. 1996); *United States v. Bautista*, 23 F.3d 726 (2d Cir.1994); *United States v. King*, 148 F.3d 968 (8th Cir. 1998); *United States v. Wilson*, 140 U.S. App. D.C. 331, 435 F.2d 403 (D.C. Cir. 1970).

█ Only when the totality of the circumstances surrounding such pretrial identifications reflect an "unnecessarily suggestive [manner] conducive to irreparable mistaken identification" do they violate constitutional due process. *Biggers*, 409 U.S. at 196-9 (noting that the primary evil to be avoided is the substantial likelihood of misidentification) (citation omitted); *United States v. Clausen*, 328 F.3d 708, 713, 60 Fed. Appx. 402 (3d Cir. 2003); *see also, Lewis v. Gov't of V.I.*, 77 F. Supp. 2d 681, 685, 42 V.I. 175 (D.V.I. App. Div. 1999) (citations omitted). "That is, we will exclude a pre-trial identification only if it was *both* produced through an unnecessarily suggestive procedure and unreliable." *United States v. Bautista*, 23 F.3d 726, 729 (2d Cir. 1994) (italics in original). Therefore, "Even if the procedure was unnecessarily (or impermissibly) suggestive ... a district court may still admit the evidence if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability." *Bautista*, 23 F.3d at 729-30 (quoting *United States v. Simmons*, 923 F.2d 934, 950 (2d Cir.), *cert. denied*, 500 U.S. 919, 111 S. Ct. 2018, 114 L. Ed. 2d 104 (1991) and citing *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977) ("reliability is the linchpin in determining the admissibility of identification testimony").

█ The following factors advise that reliability determination: (1) the witness' original opportunity to observe a defendant; (2) the degree of attention during the initial observation; (3) the accuracy of the initial description; (4) the witness's degree of certainty when viewing the defendant at the confrontation; and (5) the elapsed time between the crime and the identification procedure. *See Biggers*, 409 U.S. at 199-200.

█ Here, the trial court denied the motion to suppress, based on the testimony and other evidence adduced at a suppression hearing. We conclude the trial court did not err in denying suppression where the showup in this instance, while arguably suggestive, satisfied the standards for reliability under *Biggers*.

Prior to the incident, the victim was acquainted with her perpetrator, because he had been a close neighbor for several months, residing just

several feet from her home. Due to the close proximity of their homes, the victim and perpetrator often greeted each other as they moved about their individual properties and, in fact, did so on the morning of the crime. Additionally, Garcia had previously done yard work for her mother. Moreover, the victim testified that she had come face to face with her attacker, during daylight, as he opened the passenger door of the vehicle with the ruse of needing a ride. Thereafter, as he pulled a knife and forced her to drive away from her home, the victim spent approximately 15-20 minutes driving with her assailant, first as driver and then as passenger, during which he talked to her. The victim then endured another period of time in close contact with her assailant during the assault in Cane Valley, much of which occurred in the vehicle with the doors open and the lights on. Moreover, the victim provided an initial description of the suspect to police prior to Garcia's apprehension, and was able to accurately recall his clothing and physical characteristics.

Significantly, the showup identification occurred just minutes after the crime, after the witness was able to summon help. The victim was still in the immediate area and was shown the appellant as he was brought down from the remote brush area. The victim was unequivocal in her identification of the appellant as the perpetrator of the crimes against her. Although the appellant contends the fact that he was in handcuffs during the showup unnecessarily suggested to the victim that police believed him to be the suspect, that fact is not dispositive in light of the totality of the circumstances pointing to reliability of the identification. *See United States ex rel. Gomes v. N. J.*, 464 F.2d 686, 687-88 (3d Cir. 1972) (upholding on the scene identification of manslaughter suspect, despite fact that suspect presented to bar patrons while in handcuffs immediately after the crime, because the totality of the circumstances established that witness had good opportunity to view suspect at the time of the crime and had described him to police; identification held not unnecessarily suggestive); *Bautista*, 23 F.3d at 730 (holding that presentation of suspect at scene in handcuffs and in police custody shortly after raid was not unnecessarily suggestive; noting that such immediate identifications serve a useful purpose and are necessary under some circumstances); *United States v. King*, 148 F.3d 968, 970 (8th Cir. 1998) ("Necessary incidents of on-the-scene identifications, such as the suspects being handcuffed and in police custody, do not render the identification procedure impermissibly suggestive"); *Clausen*, 328 F.3d at 713 (Where

witness had sufficient time to view suspect prior to the crime, showup in handcuffs did not taint the identification under the totality of the circumstances.).

Under these circumstances, the trial court did not err in denying suppression of the pre-trial identification. Moreover, because we determine that the pre-trial identification was not improper, and given the victim's prior acquaintance with the appellant, we similarly conclude the in-court identification was not tainted.

## B. Whether the Sentence Imposed Was Unconstitutional.

Following his conviction by jury, Garcia was sentenced to: concurrent sentences of 25 years for attempted rape first degree (Count 1), 99 years for two counts of rape in the first degree (counts 2 and 3), and 25 years for unlawful sexual contact first degree (count 4). [Judgment and Commitment, App. at 1-2]. The trial court determined that counts one through four merged for the purpose of sentencing, consistent with local law. *See* 14 V.I.C. § 104 (prohibiting multiple punishment for offenses punishable under multiple statutes). Garcia was additionally sentenced to 99 years imprisonment for his conviction of kidnapping for rape(count 5), to run consecutively with the sentences for count 1-4. For Counts 6 and 7, which charged child abuse, Garcia received a concurrent sentence of 20 years imprisonment. [*Id.*] (noting that sentence was to run concurrent with count 5). Garcia raises two constitutional challenges to his sentence, each of which is discussed in turn.

### 1. Eighth Amendment Claim

Garcia first argues his sentence, for what he claims was effectively one crime, was excessive and grossly disproportionate to the crime, when compared to punishment for similarly serious crimes in this jurisdiction. In support of that argument, the appellant engages in a comparative analysis of sentences involving crimes of various degrees. This argument does not compel reversal.

■ While the Eighth Amendment[2] prohibits sentences that are grossly disproportionate to the crime, this standard does not impose a strict, proportionality requirement, as the appellant suggests. *See Harmelin v. Michigan,* 501 U.S. 957, 965-1005, 111 S. Ct. 2680, 115 L. Ed. 2d 836(1991) (departing from proportionality analysis espoused in *Solem v. Helm,* 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983)); *Rummel v. Estelle,* 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980). In *Harmelin,* the Court noted that such a proportionality analysis is inappropriate in the absence of some showing that the sentence is, by itself, so unconventional or extreme in comparison to the crime as to raise a presumption of excessiveness. *Harmelin,* 501 U.S. at 985-86 (noting that proportionality principle would apply in only very rare cases—those so extreme that they are likely never to occur); *compare Rummel,* 445 U.S. at 274 (acknowledging that proportionality analysis may be appropriate in extreme instances such as where a statutory sentence is, on its face, unconventional for the crime, for example, if a legislature made overtime parking a felony punishable by life imprisonment).

■ Moreover, where a sentence falls within statutory limits set by the Legislature, the reviewing court must defer to the Legislature's determination of what constitutes an appropriate sentence. *Harmelin,* 501 U.S. at 1005; *United States v. Whyte,* 892 F.2d 1170, 1175 (3d Cir. 1989). Such sentences are, therefore, generally unreviewable, absent some showing of illegality or improper procedures amounting to an abuse of discretion. *See Chick v. Gov't of V.I.,* 941 F.Supp. 49, 51 (D.V.I. App. Div. 1996); *Gov't of V.I. v. Richardson,* 498 F.2d 892, 894, 11 V.I. 213 (3d Cir. 1974); *Hutto v. Davis,* 454 U.S. 370, 372-74, 102 S. Ct. 703, 70 L. Ed. 2d 556 (1982) (noting penalties are matters of "legislative prerogative" and courts should be reluctant to review legislatively mandated terms).

---

[2] Excessive bail should not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. "U.S. CONST. amend. VIII. The Eighth Amendment of the Constitution is made applicable to the Virgin Islands by § 3 of the Revised Organic Act of 1954, 48 U.S.C. § 1561. The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 73-177 (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

■ In this instance, Garcia was sentenced according to the statutory terms.[3] The trial court also appropriately merged counts 1, 2 and 3, and counts 6 and 7 for the purposes of punishment, as required under local law. *See* 14 V.I.C. § 104. Apart from his comparative arguments, the appellant offers no suggestion that the sentence in this case was the product of illegality or procedural defects, or that the court abused its discretion in its consideration of permissible factors in fashioning an individualized sentence. *See e.g., Chick,* 941 F. Supp. at 51; *Georges v. Gov't of V.I.,* 119 F. Supp. 2d 514, 523 (D.V.I. App. Div. 2000) (noting that courts are required to individualize sentences, considering all of the mitigating and aggravating circumstances involved in the crime). Nor is there, any suggestion that the sentence of imprisonment was unconventional punishment for the charged crimes. *See Harmelin,* 501 U.S. at 994-95 ("Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history.").

---

[3] Garcia was convicted for attempted rape in the first degree, under 14 V.I.C. §§ 1701(2) and 331. Because he was previously convicted of a rape offense, [Supplemental App. at 395-99, 410(noting consideration of prior conviction of first degree rape of a child)], the statutory penalty for the inchoate crime was 25 years. *See* 14 V.I.C. § 331 (setting term of 25 years where offense punishable by imprisonment for life). The government initially filed a habitual offender information under section 61, but withdrew that filing given the similar sentencing enhancement provision included in section 1701. The defense apparently raised no objection to the court's consideration of the prior conviction, and it appears the fact of that conviction was established on the record.

For the completed crime of rape in the first degree, as charged in counts 2 and 3, the permissible sentence under section 1701 on a subsequent rape conviction, was life imprisonment or imprisonment for any term of years. *See* 14 V.I.C. § 1701. For the charge of unlawful sexual contact first degree under section 1708(1), the maximum allowable sentence was 15 years. For the charge of kidnapping for rape, under section 1052(b), the statute sets a permissible term of "not less than 15 years" imprisonment. *See* 14 V.I.C. § 1701; *compare, Henry v. Virgin Islands,* 340 F. Supp. 2d 583, 588 (D.V.I. App. Div. 2004) (noting that open-ended statute required judge only to set sentence for a definite term of years, considering the traditional goals of sentencing and the particular defendant) (citing *Gov't of V.I. v. Martinez,* 42 V.I. 146 (D.V.I. App. 1999); *Ruiz v. United States,* 5 V.I. 616, 620, 365 F.2d 500, 502 (3d Cir.1966)); *see also, Del Piano v. United States,* 575 F.2d 1066, 1069 (3d Cir.1978); *Mistretta v. United States,* 488 U.S. 361, 363, 367, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989). Finally, the charge of child abuse, under section 505, carried a maximum term of imprisonment of 20 years.

In view of the foregoing, we are unpersuaded that the appellant's sentence, which falls within that permitted by the Legislature, constituted cruel and unusual punishment under the Eighth Amendment.

## 2. Fifth Amendment Claim

Garcia additionally argues his sentence violates the Fifth Amendment's proscription against multiple punishments for the same offense. He argues there was essentially a singular offense—a rape—and he should not have received separate sentences for offenses which were all predicated on the same set of facts and elements of proof.

██ The Fifth's Amendment's Double Jeopardy Clause protects against multiple punishments for the same offense. *See* U.S. CONST. Amend. V;[4] *see also, Carillo v. United States*, 995 F. Supp. 587, 593-94, 38 V.I. 258 (D.V.I. App. Div. 1998) (*citing North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969)); *United States v. Xavier*, 2 F.3d 1281, 29 V.I. 279 (3d Cir. 1993). Therefore, where two different statutes describe the same offense, separate punishments are precluded, absent clear legislative intent to the contrary. *See Xavier*, 2 F.3d at 1290; *compare*, 14 V.I.C. § 104. Whether two statutes constitute the same offenses for double jeopardy purposes is based, not on whether the charges resulted from the same conduct as the appellant suggests but, rather, whether each requires proof of the same elements under the test articulated by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). *See e.g., United States v. Jackson*, 443 F.3d 293, 300-02 (3d Cir. 2006); *United States v. Dixon*, 509 U.S. 688, 703-704, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993) (overruling *Grady v. Corbin*, 495 U.S. 508, 110 S. Ct. 2084, 109 L. Ed. 2d 548, which adopted a same transaction test); *Georges v. Gov't of V.I.*, 119 F. Supp. 2d 514, 524-25 (D.V.I. App. Div. 2000) ("[W]hile concurrent prosecution under a single information for crimes out of a single transaction does not subject a defendant to double jeopardy, multiple punishment for the same offense does.").[5] Applying

---

[4] The Fifth Amendment of the U.S. Constitution is applicable in the Virgin Islands pursuant to § 3 of the 1954 Revised Organic Act, as amended, 48 U.S.C. § 1561.

[5] The appellant's argument that there was but one incident suggests that we should analyze the double jeopardy claim based solely on whether the charges were born of the same incident or transaction. However, such a standard would be contrary to *Blockburger*

*Blockburger,* we conclude the appellant's sentences did not amount to unconstitutional punishments.

The trial court imposed a consecutive sentence for the conviction of kidnapping for rape. Under section 1052(b), kidnapping for rape requires proof that the accused abducted, took, or carried away any person, by force or threat, with the intent to commit rape. That crime requires an element not shared by any of the other charged offenses—asportation. The primary evil addressed by that statute is the taking away of the victim, which was intended to address the increased danger to a victim who is moved to another location. *See Gov't of V.I. v. Ventura,* 775 F.2d 92, 96-97 and n.7 (3d Cir. 1985) (noting that "the legislature directed that a separate kidnapping charge be brought against certain rapists in order to increase the penalty imposed upon them.").

There is further no authority for the appellant's unsupported argument that rape in the first degree and attempted rape in the first degree, as well as unlawful sexual contact, are included offenses of kidnapping for rape, such that proof of kidnapping for rape necessarily establishes the former and implicates double jeopardy concerns. *See e.g., Gov't of V.I. v. Joseph,* 685 F.2d 857, 865-66 (3d Cir. 1982) (noting that consecutive sentences for greater crime and crime constituting lesser included offense was improper).

An offense is necessarily included in a greater offense if the latter cannot be proved without proving all of the elements of the former. *See e.g., Gov't of V.I. v. Bedford,* 671 F.2d 758 (3d Cir. 1982); *Blockburger,* 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306. As noted above, kidnapping for rape under section 1052 includes the elements of asportation of the victim done with a specific intent to rape. The charge of rape first degree requires proof of sexual intercourse or sodomy—an element not present in the kidnapping statute. Similarly, the attempt crime requires proof of an intent to rape, unsuccessful completion of that crime, and a substantial step toward its completion. *See* 14 V.I.C. § 331; *Motta v. Gov't of V.I.,* 2004 U.S. Dist. LEXIS 25112 (D.V.I. App. Div. 2004) (citing *Gov't of V.I. v. Albert,* 18 V.I. 21, 24 (D.V.I. 1980); *Parson v. Gov't of V.I.,* 167 F. Supp. 2d 857 (D.V.I. App. Div. 2001)).

and *United States v. Dixon,* 509 U.S. 688, 703-704, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993).

Moreover, a conviction for child abuse under section 505, as charged, required proof that the perpetrator "knowingly or recklessly caused a child to suffer physical, mental or emotional injury, or to be placed in a situation where it is reasonably foreseeable that a child may suffer physical, mental or emotional injury." 14 V.I.C. § 505. While the basis for the charge in this case was the perpetrator having had sexual intercourse with a child, that offense also includes an additional element that the child be made to suffer physical, mental or emotional injury as a result of the sexual conduct, and also does not include the element of force or fear required for the attempted rape, first degree rape and kidnapping offenses.

█ Where the kidnapping offense did not share the same elements with the other charged offenses, and where the trial court imposed concurrent sentences for counts one through four and six and seven to avoid multiple punishments, *see, e.g., Carillo*, 995 F. Supp. at 593-94 (noting concurrent sentences did not amount to separate sentences for same offense), this Court concludes that the appellant's sentence did not put him in double jeopardy.

### III. CONCLUSION

In view of the foregoing, the appellant's conviction and sentence will be affirmed. An appropriate order follows.