OPINION
BARRY, Circuit Judge.
Dave Vicars appeals from an order of the Appellate Division of the District Court of the Virgin Islands affirming his convictions for attempted aggravated rape and unlawful sexual contact in the first degree. Vicars raises several issues in his appeal of the aggravated attempted rape conviction, including an argument that the trial court violated his Sixth Amendment right of confrontation when it allowed a report of the victim’s physical examination to be admitted at trial. We agree that Vicars’s Sixth Amendment right of confrontation was violated and will reverse the conviction for attempted aggravated rape. Because no error is alleged to have affected the four counts of unlawful sexual contact, those convictions will be affirmed.
I.
On February 29, 2000, T.V., age 11, told a classmate that her father, Dave Vicars, had molested her over twenty times between May 1999 and mid-February 2000, and then told her teacher, her mother, and, later, the police. Police officers took T.V. to a physician, Dr. Arlene Lockridge, for a physical examination to evaluate her allegations of sexual abuse; indeed, Dr. Lockridge’s report stated that the examination was “for evaluation for alleged sexual molestation/abuse.” (Report at 3.)[1] *808 The report was accompanied by a handwritten release from T.V.’s mother authorizing photographs to be taken of T.V.’s body “for the purpose of providing medical evidence and documentation,” and acknowledging that “these photographs may be submitted as evidence in court proceedings.” (Id. at 1-2.) The report contained a description of T.V.’s allegations along with very explicit findings: “enlargement (hypertrophy) of the clitoris particularly on the left side,” “mild hypertrophy, enlargement of the labial tissue of the left labia and surrounding clitoral area,” and “purplish/blackish discoloration of the tissue within the folds of labia minora suggestive of bruising (repeated bruising).” (Id. at 6-7.)
It was no secret, even prior to trial, that Dr. Lockridge would not be testifying at trial because, the Government said, she had moved from the Virgin Islands to New Jersey. There had also been a fair amount of discussion prior to trial about the report and the “expert witness” the Government would be calling to “explain” parts of the report. Prior to trial, Vicars objected to the admission of at least some of the report at trial. That having been said, it is not an overstatement to say that the nature of Vicars’s objections, the Government’s shifting bases for admissibility, and the trial court’s tentative and conflicting rulings on the matter were unclear, if not altogether confusing. We do not pause to recite that history here.
Before any final ruling had been made on admissibility, the two-day trial commenced. With the fate of the report still undetermined, the Government, in its opening statement, nonetheless told the jury that they would have that report and could see Dr. Lockridge’s findings for themselves. The Government noted, for example, that “Dr. Lockridge was able to find that there were [sic] certain redness and swelling or bruising on [TV’s] vagina that was consistent with what she had said had been happening over a period of time.” (App. at 65.) Equally as disturbing as were these statements, made even though the trial court had reserved decision on whether the report would be admitted at all and, if so, on what basis and with what, if any, redactions, was the failure of Vicars to object on this ground and the failure of the trial court to intervene.
The Government called, as its first witness, Valerie Green, the custodian of records at the clinic at which Dr. Lockridge worked, to lay the foundation for the admission of what she described (although it was not titled as such) as “the child abuse report” as a “Recordf ] of Regularly Conducted Activity” under Fed.R.Evid. 803(6). (Id. at 82.) When, however, the trial court ultimately ruled on admissibility, it found the report admissible under Fed.R.Evid. 803(4) — “Statements for purposes of medical diagnosis or treatment” — with the exception of any “conclusions and opinions reached by Dr. Lockridge.” (Id. at 70.) Notably, the trial court did not find that T.V. was taken to the clinic for medical diagnosis or treatment — and T.V. herself had made no statements in those regards — but instead found that she was taken there by law enforcement officers “for the purposes of the investigation and potential ... criminal litigation.” (Id.) Apparently for that reason as well, Dr. Lock-ridge’s conclusions were ordered redacted.
This can only be described as a Pyrrhic victory for Vicars, for the report was admitted into evidence virtually in full with only two redactions: Dr. Lockridge’s conclusion of “suspected sexual abuse” and a *809 page entitled “Supplemental Treatment Form.” (Id. at 70, 72-73.) All of Dr. Lock-ridge’s graphic physical observations and findings remained in, even though none of them had anything even remotely to do with “statements for purposes of medical diagnosis or treatment.”[2] The Government thereafter called Dr. Christine Lloyd as an expert, with the trial court permitting her “to interpret the female organs [and] describe to the jury [the] general terms” used in the report, as well as the history recited therein. (Id. at 71-72.)
The report aside, the Government’s main witness was, of course, T.V. T.V. testified that Vicars would come into her bedroom at night and put his hand and penis on her vagina. (Id. at 64.) “He was rubbing his hands on my vagina and then he would take his penis and put it on my vagina and start to push.” (Id. at 62.) In response to the question, “And at any point in time did you feel his penis enter your vagina?” T.V. answered, “No,” and said that she was wearing a “nighty” and underwear during the encounters. (Id. at 64-65.) The Government concedes that “[F]rom [TVs] testimony alone, there was no penetration.” (Tr. 2/7/02 at 24.) Vicars subsequently testified on his own behalf, denying the allegations.
On February 12, 2002, Vicars was convicted on all counts and his motion for a new trial was subsequently denied. He appealed to the Appellate Division, arguing that the trial court erred when it admitted hearsay evidence; entered judgment of conviction without sufficient evidence; denied his motion for a new trial, even though there was newly discovered evidence; and failed to declare a mistrial when there was prosecutorial misconduct.
On August 5, 2008, more than six years after Vicars was convicted — a shockingly long period of time — the Appellate Division affirmed, rejecting all of Vicars’s claims of error.[3] As relevant here, it described Dr. Lockridge’s report as a “medical record” authored “as part of the clinic’s regular practice in treating patients,” (App. at 14), although Ms. Green had not testified that that was the clinic’s “regular practice,” much less that Dr. Lockridge or her report had anything to do with any treatment of TV. “As a result,” it concluded, albeit with no discussion, the “medical record fits squarely within the business records exception,” and the trial court’s decision to admit the record was not plain error. (Id. at 15). It did not so much as mention the Rule 803(4) exception for statements made for medical diagnosis or treatment, the sole basis relied upon by the trial court. Again, Vicars has appealed.
For the reasons discussed below, we will reverse Vicars’s conviction for attempted aggravated rape because of the erroneous admission of Dr. Lockridge’s report, an error we cannot find is harmless beyond a reasonable doubt.[4]
II.
We have jurisdiction pursuant to 48 U.S.C. § 1613a(c), and, in our review, use “the same standard of review applied by the first appellate tribunal.” Tyler v. *810 Armstrong, 365 F.3d 204, 208 (3d Cir.2004). Thus, we generally review a trial court’s decision to admit evidence for abuse of discretion, Hirst v. Inverness Hotel Corp., 544 F.3d 221, 225 (3d Cir.2008), although we review matters as to which there was a failure to timely object for plain error. United States v. Haywood, 363 F.3d 200, 206 (3d Cir.2004). To demonstrate plain error, an appellant must prove that (1) the trial court erred, (2) the error was plain, and (3) the error affected substantial rights, “usually meaning that the error must have affected the outcome of the [trial] court proceedings.” Gov’t of the Virgin Islands v. Rosa, 399 F.3d 283, 293 (3d Cir.2005) (citations and internal quotations omitted).
III.
Vicars argues, in the one issue we consider on appeal, that the admission of Dr. Lockridge’s report deprived him of his Sixth Amendment right to confront the witnesses against him. He had lodged a contemporaneous but vague objection to the admission of a limited part of the report, but any argument as to the Confrontation Clause was surely not developed by him, was barely referenced by the trial court and then only early in the case, and was not addressed at all by the Appellate Division. By whatever standard we apply — abuse of discretion; plenary review, as we ordinarily do in Confrontation Clause challenges, United States v. Lore, 430 F.3d 190, 208 (3d Cir.2005); or plain error review — Dr. Lockridge’s report was erroneously admitted.
We briefly dispose of the ground on which the trial court based admissibility, Rule 803(4). It has never been seriously argued that T.V. was at the clinic for medical diagnosis or treatment and so, almost by definition, no statements were made by her, or by others on her behalf, for medical diagnosis or treatment. Game, set, and match as to Rule 803(4). And because Dr. Lockridge’s report was, in her own words, for “the purpose of providing medical evidence” in potential “court proceedings” (Report at 1-2), the admission of the report violated Vicars’s right of confrontation.
In Crawford v. Washington, 541 U.S. 36, 56, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court held that a defendant’s Sixth Amendment right of confrontation is violated by the admission of testimonial statements of a witness who was not subject to cross-examination at trial, unless the witness was unavailable to testify and the defendant had a prior opportunity for cross-examination. The Court cited a dictionary definition of “testimony” as “[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact,” and confirmed that the “core class” of testimonial statements includes affidavits, custodial examinations, prior testimony not subject to cross-examination, and “statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.” Crawford, 541 U.S. at 51-52, 124 S.Ct. 1354. Accordingly, we have held that the circumstances under which a statement is made are key to evaluating whether a statement is testimonial. See United States v. Hinton, 423 F.3d 355, 360 (3d Cir.2005) (finding that statements made during a pretrial identification of a defendant by a victim were testimonial, but that statements made during a 911 call were nontestimonial); see also United States v. Hendricks, 395 F.3d 173 (3d Cir.2005) (concluding that “Title III” recorded conversations intercepted by law enforcement are nontestimonial).
The Supreme Court recently revisited the issue of what constitutes a “testimonial” statement subject to a defendant’s Sixth Amendment right of confrontation in *811 Melendez-Diaz v. Massachusetts, — U.S. -, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). In Melendez-Diaz, petitioner objected to the admission of three “certificates of analysis” which showed that seized substances contained cocaine. In Massachusetts, state law required a forensic analyst, at the request of the police, to test seized evidence for the presence of illegal drugs, Mass. Gen. L. ch. Ill, § 12, and required the analyst to provide the police with his or her findings on a “signed certificate, on oath.” Mass. Gen. L. ch. Ill, § 12. The certificate could then be admitted in court as prima facie evidence of the composition, quality, and net weight of the substance at issue in the prosecution. Mass. Gen. L. ch. 22C, § 39. The Court held that these certificates, which it described as “quite plainly affidavits,” were testimonial statements because they were made under oath and under circumstances which would lead an objective witness to believe that the statement would be used at a later trial; indeed, the Court noted that the sole purpose of the certificates was to provide prima facie evidence at trial. Melendez-Diaz, 129 S.Ct. at 2538.
The Court firmly rejected the state’s argument that the certificates at issue were nontestimonial because they qualified as “records of regularly conducted activity” for purposes of the hearsay exception in Rule 803(6). The Court explained that although such business records are ordinarily admissible at trial despite their status as hearsay, “that is not the case if the regularly conducted business activity is the production of evidence for use at trial.” Melendez-Diaz, 129 S.Ct. at 2538.
Dr. Lockridge’s report was clearly “testimonial” because it was prepared under circumstances that would lead an objective witness reasonably to believe that it would be used prosecutorially at trial; indeed, Dr. Lockridge herself wrote on the release she caused T.V.’s mother to sign as part of the report that photographs would be taken of T.V.’s body for the “purpose of providing medical evidence” and that the photographs “may be submitted as evidence in court proceedings.” (Report at 2.) The trial court so found, stating that law enforcement officers took TV. to the clinic “for the purposes of investigation and potential ... criminal litigation.” (App. at 70.) It was clear even before Melendez-Diaz, which simply confirmed what Crawford had said regarding statements made with the expectation that they would be used at trial, that the trial court — and the Appellate Division — should have known that Vicars’s right of confrontation would be violated were the report to be admitted.[5]
We paraphrase Melendez-Diaz:
[Ujnder our decision in Crawford [Dr. Lockridge’s report was] testimonial, and [Dr. Lockridge was, therefore, a witness] for purposes of the Sixth Amendment. Absent a showing that [Dr. Lockridge was] unavailable to testify at trial and that petitioner had a prior opportunity to cross-examine [her], peti *812 tioner was entitled to ‘be confronted with’ [Dr. Lockridge] at trial.
Melendez-Diaz, 129 S.Ct. at 2532. We need not decide whether the Government’s statement that Dr. Lockridge moved to New Jersey was sufficient to show that she was “unavailable” to testify, because there is no question that Vicars had no prior opportunity to cross-examine her. Dr. Lockridge’s report was erroneously admitted, and thus the testimony of Dr. Lloyd, which consisted solely of Dr. Lloyd explaining what Dr. Lockridge said in her report, was erroneously admitted as well.
The Government has not argued “harmless error,” but, even if it had, it could not persuade us to affirm Vicars’s conviction for attempted aggravated rape.[6] We may affirm despite error only when we find the error to be harmless beyond a reasonable doubt, that is, “when the record shows beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.” United States v. Hardwick, 544 F.3d 565, 574 (3d Cir.2008). Here, it is all but certain that, without Dr. Lockridge’s report, there could not have been a conviction for attempted aggravated rape given that the report, and specifically the observation of bruising, was the sole evidence of attempted penetration, a necessary element of that crime.[7]
IV.
For the reasons stated above, we will reverse the judgment of the Appellate Division as to Vicars’s conviction for attempted aggravated rape and affirm his convictions for unlawful sexual contact in the first degree.

. We note our dismay that, although Dr. Lockridge's report played a critical role at trial and underlies our reversal on appeal, neither party provided it to us and we were forced to request it, as well as other relevant *808 documents. The report will be cited as the “Report”; transcripts of proceedings not in the Appendix but requested by us will be cited by date; and Appendix references will be cited as “App.”

.At argument on the pretrial motions, the trial court seemed to understand that "it’s what you tell the doctor that is admissible.” (Tr. 2/7/02 at 27.) ”[T]he history is allowed .... [because] [i]t’s assumed that if you are going in for treatment, you won't lie to your doctor.” (Id. at 26-27.) But almost immediately thereafter, the trial court said that "[the expert] can read the findings.” (Id. at 28.)

. During the lengthy interim between trial and the decision of the Appellate Division, what had been the Territorial Court became the Superior Court. We are referring to both iterations as “the trial court."

. Given this disposition, we need not and thus will not review Vicars’s other claims of error.

. Additionally, Melendez-Diaz leaves no doubt that Dr. Lockridge’s report need not have specifically accused Vicars in order for her to be considered a “witness against” him for purposes of the Confrontation Clause. Melendez-Diaz, 129 S.Ct. at 2535. It is sufficient that the report was used to prove a fact necessary for his conviction: specifically, evidence of bruising within the labial folds, which the jury presumably found indicated attempted penetration, an essential element of the crime of attempted aggravated rape. See 14 V.I.C. §§ 1699(d), 1700. The Court also confirmed that a statement need not be made in response to interrogation in order to be considered “testimonial,” Melendez-Diaz, 129 S.Ct. at 2535, and that the ability of the defendant to subpoena the witness himself was not a substitute for the right of confrontation, id. at 2540.

. A defendant may be convicted of aggravated rape, 14 V.I.C. § 1700, when the government proves that he: (1) perpetrated an act of sexual intercourse, (2) with a person not his spouse, (3) who is under the age of thirteen. "Sexual intercourse" is defined as "vaginal intercourse or any insertion, however slight, of a hand, finger or object into the vagina, vulva, or labia, excluding such insertion for medical treatment or examination.” 14 V.I.C. § 1699(d). In the Virgin Islands, attempt requires proof of intent, unsuccessful completion of that crime, and a substantial step towards its completion. 14 V.I.C. § 331; Garcia v. Gov’t of the Virgin Islands, — F.Supp.2d -, 2006 WL 2993019 (D.Vi. Sept.25, 2006).

. The Appellate Division found that T.V.'s testimony provided evidence of attempted penetration. We disagree. T.V. testified that she wore her nightgown and underwear each time Vicars molested her and that he never tried to remove them, much less to insert his penis into her vagina.