**BANDELE K. RICHARDS, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2008-064

Supreme Court of the Virgin Islands

January 13, 2010

ERIC S. CHANCELLOR, ESQ., St. Croix, USVI, *Attorney for Appellant.*

PAMELA TEPPER, ESQ., AAG, Dept. of Justice, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(January 13, 2010)

HODGE, C.J. Appellant, Bandele Richards ("Richards"), challenges his conviction following a jury trial and the Superior Court's August 4, 2008 Order of Judgment and Commitment, arguing that the trial court erred in denying his pre-trial motion to suppress the out-of-court and in-court identifications of Richards. For the reasons which follow, we will affirm the conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At about noon on August 6, 2006, Daniel Coughlin (hereafter "Coughlin") was robbed by two men after parking and exiting his car near his home in Frederiksted, St. Croix. As Coughlin walked to the trunk of his car, a man came up to him, pointed a gun in his face, and demanded that he turn over his money. A second man then came from behind the trunk of Coughlin's car and ordered Coughlin to turn over his wallet. Coughlin described the person with the gun as a black male wearing a white shirt and dark-colored pants. The other person was described as a black male with spiky dreadlocks; no description of the man's clothing was given. Coughlin testified that the men initially attempted to obscure their faces with the top of their shirts but both men dropped their shirts

from their faces at some point during the robbery, enabling Coughlin to see their faces.

After taking Coughlin's wallet, which contained $480, the two men ran down the street. A woman, who was driving down the street as the two men ran away, stopped her car and asked Coughlin if he had just been robbed. Coughlin confirmed that he had been robbed, and the woman told him that she would follow the men while Coughlin called the police. The woman proceeded to follow the two men and witnessed them getting into a maroon Honda Civic which was driven by another man. After following the car for several minutes, the woman signaled to the police, who subsequently pulled over the maroon Honda Civic. Three black men were riding in the car, including Richards who had spiky dreadlocks. The police searched the car and found Coughlin's brown wallet, driver's license, two credit cards and swipe card concealed inside a CD case that had been placed in the inside pocket of the right, front passenger door. The police also recovered $481 from one of the men.

Richards and the two other men were transported to the police station in handcuffs. Coughlin was taken to the police station parking lot, where he was placed in a police car with heavily tinted windows. The police told Coughlin that three suspects would be brought out of the station one at a time and that he should tell the police officer inside the car with him if he recognized the person being shown to him as one of the robbers. The officer would honk the horn to indicate that Coughlin had identified the suspect. Using this identification procedure, Coughlin identified two of the three men, including Richards who was the only person with spiky dreadlocks shown to Coughlin. The suspects were not handcuffed at the time they were shown to Coughlin, and they were standing ten to fifteen feet from the police car.

Richards was charged in a Third Amended Information with numerous crimes, including first degree robbery and first degree assault. On June 5, 2007, Richards filed a pre-trial motion to suppress Coughlin's out-of-court and in-court identifications, on grounds that the identification procedure used by the police violated his due process rights because it was unnecessarily suggestive and conducive to irreparable mistaken identity. The People opposed the motion on August 31, 2007, arguing that, even if the procedure was suggestive, it was nevertheless reliable under the totality of the circumstances. A suppression hearing was held on October 5, 2007. In an order entered on October 23, 2007, the trial court

denied Richards's motion to suppress, finding that the "show-up" identification procedure was not unnecessarily suggestive and that, under the totality of the circumstances, there was no substantial likelihood that Coughlin misidentified Richards.

On April 25, 2008, a jury convicted Richards of robbery in the first degree and assault in the first degree. Thereafter, the trial court's August 4, 2008 Order of Judgment and Commitment sentenced Richards to six years of incarceration for robbery and three years of incarceration for assault, to run concurrently. On August 6, 2008, Richards filed a timely notice of appeal.

## II. DISCUSSION

### A. Jurisdiction and Standards of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees [and] final orders of the Superior Court . . . ." V.I. CODE ANN. tit. 4 § 32(a).[1] In reviewing the trial court's denial of Richards's motion to suppress, "we review its factual findings for clear error and exercise plenary review over its legal determinations." *People v. John*, 52 V.I. 247, 255 (V.I. 2009) (internal quotations omitted).

### B. The Admission of the Identifications Did Not Violate the Due Process Clause

As his sole ground for appeal, Richards argues that the trial court erred in denying his motion to suppress Coughlin's out-of-court and in-court identifications of Richards. In particular, Richards contends that his due process rights were violated because the out-of-court identification procedure was unnecessarily suggestive and gave rise to a substantial likelihood of misidentification.[2] The People counter that Richards's due process rights were not violated because, even if the out-of-court

---

[1] We note that the People incorrectly cite to 4 V.I.C. § 33(d)(2) as providing this Court with jurisdiction over this appeal. Title 4, section 33(d)(2) permits the People to appeal from an order of the trial court suppressing evidence prior to the rendering of the verdict. Here, it is Richards, not the People, who appeals, and he appeals after the rendering of the verdict.

[2] The Fourteenth Amendment's Due Process Clause is made applicable to the Virgin Islands pursuant to section 3 of the Revised Organic Act. *See* The Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 86 (1995) (preceding V.I. CODE ANN. tit. 1).

identification procedure was unnecessarily suggestive, the identification was nevertheless reliable under the totality of the circumstances.

■ In three seminal cases, the United States Supreme Court established the framework for determining whether a witness's out-of-court identification violates a defendant's due process rights. First, in *Stovall v. Denno*, 388 U.S. 293, 302, 87 S. Ct. 1967, 1972, 18 L. Ed. 2d 1199 (1967), the Supreme Court recognized that "[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." Nevertheless, the Court stated that "a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it . . . ." *Id.* In *Stovall*, the victim identified the defendant after the defendant was brought to the victim's hospital room handcuffed to a police officer a day and a half after the crime was committed. *Id.* at 295. The Court held that a defendant may attack an identification on grounds that it was "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to result in a denial of due process. *Id.* at 302. Nevertheless, the *Stovall* Court ultimately concluded that no due process violation had occurred because the usual police station lineup was "out of the question" as no one knew how long the victim might live and it was not feasible for her to visit the jail. *See id.*

■ Five years later, in *Neil v. Biggers*, 409 U.S. 188, 195, 93 S. Ct. 375, 380 34 L. Ed. 2d 401 (1972), the Supreme Court was faced with a show-up identification procedure in which the police, purportedly unable to find anyone who resembled the defendant for a lineup, called the victim to the police station, walked the defendant past the victim, and had the defendant say "shut up or I'll kill you."[3] Noting that "the primary evil to be avoided is a very substantial likelihood of irreparable misidentification," the *Biggers* Court nevertheless stated that "as *Stovall* makes clear, the admission of evidence of a showup without more does not violate due process." 409 U.S. 188, 198, 93 S. Ct. 375, 381-82, 34 L. Ed. 2d 401. The Court identified the central question as "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Id.* at 199.

---

[3] Although *Biggers* was decided five years after *Stovall, Biggers* involved an identification that had occurred prior to the Court's decision in *Stovall.*

Significantly, the Court enumerated several factors to be considered in evaluating the likelihood of misidentification:

[1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation.

*Id.* at 199-200. After weighing all the factors, the *Biggers* Court concluded that there was no substantial likelihood of misidentification: because the witness spent up to thirty minutes with the assailant, whose face she saw directly and illuminated by artificial light and moonlight; the witness was a victim rather than a casual observer; the witness gave a detailed description to the police; and she testified that she had "no doubt" the defendant was her rapist. *See id.* at 200.

Finally, in *Manson v. Brathwaite*, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d. 140 (1977), the Supreme Court examined an out-of-court identification procedure that consisted of a police officer witness being shown a single photograph of the defendant which had been selected in part based upon the officer's description of the suspect. The *Brathwaite* Court applied the *Biggers* analysis to determine whether the identification process created a substantial likelihood of misidentification. Notably, the Court rejected a strict exclusionary rule in favor of a totality of the circumstances approach that focuses on the reliability of the identification stemming from an unnecessarily suggestive identification procedure. *See Brathwaite*, 432 U.S. at 110-14. Balancing the *Biggers* factors against "the corrupting effect of the suggestive identification itself," the Court concluded that both lower courts had erred in their *per se* exclusion of the identification because: the witness had observed the suspect for two to three minutes with natural light illuminating the suspect's appearance; the witness was an on-duty trained police officer rather than a casual or passing observer; the witness gave a detailed description of the suspect to the police minutes after the crime; the witness testified that "[t]here is no question whatsoever" that the person in the photograph was the suspect; and the photographic identification took place only two days after the crime. *Id.* at 114-15. The Court noted that, although single-photograph identifications may be viewed with suspicion, there was little pressure on the witness to acquiesce in the suggestiveness of such a procedure

because the witness was given the photograph to view alone and at his leisure. *See id.* at 116.

■ Pursuant to the Supreme Court's holdings in *Stovall, Biggers*, and *Brathwaite*, the appropriate analysis for determining whether an identification procedure created a substantial likelihood of misidentification, and thus violated due process, is two-fold. First, we determine whether the identification procedure was unnecessarily suggestive, and, if so, we must decide whether the identification itself was nevertheless reliable. *See Garcia v. Gov't*, 48 V.I. 530, 536 (D.V.I. App. Div. 2006), *aff'd Gov't of the Virgin Islands v. Garcia*, 232 Fed. Appx. 167, 169 (3d Cir. 2007) (applying two-part test and holding that, although showup was arguably suggestive, admission of identification did not violate due process because identification was reliable); *United States v. Brownlee*, 454 F.3d 131 (3d Cir. 2006) (applying two-part test and holding that, although show-up was unnecessarily suggestive, identification was reliable under the totality of the circumstances).

In this case, the trial court applied the proper two-part analysis and concluded that there was no substantial likelihood that Coughlin misidentified Richards. Specifically, the court found that the identification procedure was not unnecessarily suggestive and that, under the totality of the circumstances, the identification itself was reliable.

### 1. The Show-Up Identification Procedure Was Unnecessarily Suggestive

■ On appeal, Richards contends that the show-up was clearly suggestive because Coughlin was shown only one black male with spiky dreadlocks and because Richards was escorted by the police during the show-up. The People argue that the procedure was not suggestive because Coughlin identified only two of the three men, the police did nothing to influence Coughlin's perception of Richards, and Coughlin's personal belongings were found in the car in which Richards was a passenger. In concluding that the procedure was not unnecessarily suggestive, the trial judge was persuaded by the facts that one of the men shown to Coughlin was not identified and that items belonging to Coughlin were found in the

car in which Richards was traveling.[4] As to the fact that the show-up occurred in the parking lot of the police station, the judge merely stated that he could not on grounds of location alone determine that the show-up was unnecessarily suggestive.

■ "A lineup is unduly suggestive as to a given defendant if he meets the description of the perpetrator previously given by the witness and the other lineup participants obviously do not." *Raheem v. Kelly*, 257 F.3d 122, 134 (2d Cir. 2001) (defendant was only person in lineup wearing black leather jacket, which suspect was described as wearing). Importantly, "[l]ineups in which suspects are the only participants wearing distinctive clothing or otherwise matching important elements of the description provided by the victim have been severely criticized as substantially increasing the dangers of misidentification." *Israel v. Odom*, 521 F.2d 1370, 1374 (7th Cir. 1975) (defendant was only person in lineup wearing glasses, which was salient feature of victim's description to

---

[4] The People argued, and the trial court concluded, that the presence of Coughlin's personal belongings in the vehicle is relevant to the due process analysis because it indicates that the identification procedure was not suggestive. However, courts have overwhelmingly held that the presence of corroborating evidence is not relevant to the due process analysis. *See Brathwaite*, 432 U.S. at 118, 97 S. Ct. at 2255 (Steven, J., concurring) ("[I]n evaluating the admissibility of particular identification testimony it is sometimes difficult to put other evidence of guilt entirely to one side. Mr. Justice Blackmun's opinion for the Court carefully avoids this pitfall and correctly relies only on appropriate indicia of the reliability of the identification itself."); *United States v. Emanuele*, 51 F.3d 1123, 1128 (3d Cir. 1995) ("Independent evidence of culpability will not cure a tainted identification procedure, nor will exculpatory information bar admission of reliable identification testimony. We will consider other evidence only to determine whether an error, if present, was harmless."); *Raheem v. Kelly*, 257 F.3d 122, 141 (2d Cir. 2001) ("We too conclude that evidence of record that is unrelated to an identification but that is supportive of a finding of guilt is properly considered in harmless-error analysis, not in the due process inquiry of whether the identification has reliability."); *United States v. Rogers*, 126 F.3d 655, 659 (5th Cir. 1997) ("The bulk of the evidence presented at trial could not be used in our preceding analysis of whether Rodrigue's identification of Rogers was reliable because admissibility rests on the reliability of the identification judged solely by the circumstances indicating whether it was likely to be a well-grounded identification, not whether it seems likely to have been correct in light of other available evidence."); *Graham v. Solem*, 728 F.2d 1533, 1546 (8th Cir. 1984) ("Under the *Biggers* test for the admissibility of an eye-witness identification, other evidence of guilt does not play a formal role in the analysis." (citing *Brathwaite*, 432 U.S. at 116, 97 S. Ct. at 2253)). *But see United States v. Wilkerson*, 84 F.3d 692, 695 (4th Cir. 1996) ("Courts may also consider other evidence of the defendant's guilt when assessing the reliability of the in-court identification."). Consistent with the majority of jurisdictions, it is evident that corroborating evidence of guilt would be relevant only to a harmless error analysis.

police); *see also United States v. Clark*, 499 F.2d 889, 890 (6th Cir. 1974) (defendant was only person in photo array with long hair and a drooping mustache).

■ Here, the fact that Richards was the only suspect with spiky dreadlocks shown to Coughlin strongly indicates that the procedure employed by the police was suggestive. Because Coughlin's only description of the second robber was that he was a black male with spiky dreadlocks, the suspect's hairstyle was undoubtedly the salient feature of the description.[5] *See, e.g., United States v. Garcia-Alvarez*, 541 F.3d 8, 14 (1st Cir. 2008) ("[S]ince [the witness's] description of the assailants to the police highlighted their Dominican accents, that [the defendant] was the only panel participant who possessed this salient characteristic turned the entire identification proceeding unduly suggestive."); *Frazier v. New York*, 156 Fed. Appx. 423, 425 (2d Cir. 2005) ("[Defendant] was the only person in the lineup with dreadlocks of any significant length, and dreadlocks of alternating length were the most distinctive feature of the description given by the victim who identified him from the lineup."). Accordingly, we hold that the identification procedure employed in this case was unduly suggestive.[6]

■ ■ Although we conclude that the identification procedure was suggestive, we must next determine whether the suggestive procedure was necessary under the circumstances of this case. *See, e.g., Israel*, 521 F.2d at 1373 ("If such suggestiveness is found, the court must next consider whether any unusual or exigent circumstances existed which might, at least in part, have justified the use of the faulty procedures.");

---

[5] During the suppression hearing, one of the police officers testified that the third man shown to Coughlin — the man not identified by Coughlin — wore his hair "braided" down to his collarbone. (App. at 51-52.) However, the record clearly reveals that Richards was the only suspect shown to Coughlin with "dreadlocks." (App. at 38.)

[6] It appears from the record that the type of show-up utilized in this case and the photo array are the identification procedures routinely used in this jurisdiction. During trial, the officer who conducted the show-up in this case testified that he had never seen a line-up conducted during his twelve years as a police officer. (Supp. App. at 481.) He stated that a line-up "is something you see on TV. This is reality here." (*Id.* at 480.) This Court is mindful of the Supreme Court's admonition that "[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." *Stovall*, 388 U.S. at 302, 87 S. Ct. at 1972. However, since we hold that the identification procedure was suggestive because Richards was the only suspect with the salient feature described by Coughlin, we need not determine whether the police station parking lot show-up, as it occurred in this case, is inherently suggestive in and of itself.

*Brownlee*, 454 F.3d at 138 n.4 ("[T]he Government has failed to demonstrate that a show-up procedure was imperative."); *Brisco v. Ercole*, 565 F.3d 80, 88 (2d Cir. 2009) ("[The] court must identify the circumstances giving rise to the procedure, gauge the exigencies that the circumstances entailed, [and] determine whether the identification procedure was warranted under the circumstances . . . ." (internal quotations omitted)). Here, we can discern no emergency or exigent circumstances that made it impractical for the police to conduct a less suggestive identification procedure. Coughlin did not suffer any injuries, nor was he in immediate danger. Moreover, there is no indication that it would have been difficult for the police to conduct a line-up or a photo array that included other persons with a hairstyle matching Coughlin's description. Therefore, the suggestiveness of the show-up was clearly unnecessary in this case. *Compare State v. Mitchell*, 204 Conn. 187, 527 A.2d 1168, 1175 (Conn. 1987) ("[B]oth defendants were brought into the foyer of the hospital emergency room. The victim, seated in a wheelchair, was wheeled by them twice. . . . Because the victim, at the time of the show-up, was neither in immediate danger of death nor seriously injured, the trial court's finding that such suggestiveness was unnecessary was not unreasonable. Although it might have been difficult to assemble a full lineup at 2:30 a.m., the victim . . . could just as readily have been taken to view the defendants in a more neutral setting.") *with People v. Seegers*, 172 A.D.2d 183, 186, 568 N.Y.S.2d 361 (N.Y. App. Div. 1991) (exigent circumstances justified show-up identification at hospital where police were told by emergency medical service personnel that victim's injuries were serious and that she may have been stabbed in the heart) *and Stovall*, 388 U.S. at 302 ("No one knew how long [the victim] might live. Faced with the responsibility of identifying the attacker, with the need for immediate action and with the knowledge that [the victim] could not visit the jail, the police followed the only feasible procedure and took Stovall to the hospital room.").

Accordingly, we hold that the show-up identification procedure was unnecessarily suggestive under the facts of this case.

### 2. *The Identification Was Reliable Under the Totality of the Circumstances*

■ As the Supreme Court stated in *Brathwaite*, "reliability is the linchpin in determining admissibility of identification testimony."

432 U.S. at 114, 97 S. Ct. at 2253. Thus, even though we conclude that the show-up was unnecessarily suggestive, we must decide whether the identification possessed sufficient indicia of reliability such that, under the totality of the circumstances, the admission of the out-of-court identification did not violate Richards's due process rights.

On appeal, Richards argues that Coughlin's identification was unreliable because the description was vague and because Coughlin's degree of attention was low as he was focused on the gun pointed in his face and the robbery happened very quickly. In contrast, the People contend that the identification was reliable because: Coughlin had an unobstructed view of the robber, who was close enough to demand Coughlin's wallet; it was daylight when the robbery occurred; and Coughlin's description was detailed. In the order denying Richards's motion to suppress, the trial court applied the *Biggers* reliability factors and concluded that the identification was reliable. In particular, the court found that: Coughlin had ample opportunity to observe the robber because it was full daylight; Coughlin's degree of attention was considerable because he was concentrating on the threat at hand; the initial description of the robber matched Richards's appearance; Coughlin had a high degree of certainty that Richards was one of the robbers; and the show-up occurred on the day of the incident.

When determining whether the unnecessarily suggestive show-up was reliable, our task is to balance the *Biggers* factors against "the corrupting effect of the suggestive identification itself." *Brathwaite*, 432 U.S. at 114. We turn first to the application of the *Biggers* factors. As to Coughlin's opportunity to view the suspect at the time of the robbery, it is significant that the crime occurred around noon because there was plenty of daylight to illuminate the robbers' physical features. Additionally, the record reveals that, although the two robbers initially covered their faces with the top of their shirts, both men dropped the shirts from their faces during the robbery allowing Coughlin to observe their faces unobstructed. Moreover, it is clear that Coughlin observed the robbers at close proximity, as one man stood close enough to Coughlin to brandish a gun in his face while the other was close enough to take Coughlin's wallet. As for the second factor, Coughlin's degree of attentiveness, there was suppression hearing testimony from a police officer that Coughlin said he got a good look at the dreadlocked male that came from behind the car. On the other hand, the fact that Coughlin

391

identified one robber only by the color of his clothes and the other only by his hairstyle suggests that Coughlin's attentiveness may not have been of a very high degree. Third, as to the accuracy of Coughlin's description, it is undisputed that Richards was a black male with spiky dreadlocks. However, despite the People's contrary characterization, the description of a black male with spiky dreadlocks is not especially detailed.

With respect to the fourth factor, Coughlin's level of certainty that Richards was one of the robbers, the record reveals that the officer in the police car with Coughlin testified that Coughlin said "that's one of them" and "I recognize that one" without hesitation when Richards was escorted from the police station. (App. at 47.) Additionally, nothing in the record indicates that Coughlin was under any pressure by the police to identify the particular suspects being shown to him. As to the fifth factor, the length of time between the robbery and the identification, the record reveals that the show-up occurred approximately thirty minutes after the robbery. Such a short period of time supports a conclusion that the robbers' appearances would have been fresh in Coughlin's mind at the time of the show-up. Finally, as the People argue on appeal, the fact that Coughlin identified the first and third suspects shown to him but not the second suspect strengthens the reliability of Coughlin's identification.

On balance, our assessment of the *Biggers* factors leads us to conclude that Coughlin's identification was reliable under the totality of the circumstances. Furthermore, when we weigh these factors against "the corrupting effect of the suggestive identification itself," we simply cannot conclude that the unnecessary suggestiveness of the show-up had such a corrupting effect on the reliability of the identification that the identification should have been suppressed. Accordingly, we hold that the trial court's admission of the out-of-court identification was not a denial of Richards's due process rights.[7]

---

[7] We note that even a finding of unreliability would not have compelled a reversal in this case, because any error in admitting the identification may have been harmless given the ample other evidence of Richards's guilt presented to the jury. *See Emanuele*, 51 F.3d at 1128-29 (stating that appellate court must consider harmless error analysis when admission of pre-trial identification violates due process). As this Court has previously stated, the presence of corroborating evidence indicates that any error in admitting improper evidence may be harmless. *See Phillips v. People*, 51 V.I. 258, 276 n.15 (V.I. 2009) (quoting *Idaho v. Wright*, 497 U.S. 805, 823, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990)). In this case, there was testimony at trial that Coughlin's wallet, credit cards, and driver's license, as well as a firearm,

Finally, we note that Richards argues on appeal that the in-court identification should also have been suppressed, because a witness who identifies a defendant prior to trial is not likely to go back on his word when asked to identify the defendant at trial. As the Third Circuit Court of Appeals stated in *United States v. Clausen*, 328 F.3d 708, 713, 60 Fed. Appx. 402 (3d Cir. 2003):

> The standard for admitting evidence of a pretrial identification is the same as the standard for permitting an in-court identification in the wake of a pretrial identification. In both cases, the eyewitness testimony will be permitted unless the *pretrial* identification procedure was so unnecessarily suggestive as to give rise to such a substantial likelihood of irreparable misidentification that admitting the identification testimony would be a denial of due process.

(emphasis added). *See also Brathwaite*, 432 U.S. 98, 107 n.9, 97 S. Ct. 2243, 2249 n.9, 53 L. Ed. 2d. 140 (1977) (*"Biggers* . . . clearly adopts the reliability of the identification as the guiding factor in the admissibility of both pretrial and in-court identifications."); *Garcia*, 48 V.I. at 538 ("[B]ecause we determine that the pre-trial identification was not improper . . . we similarly conclude the in-court identification was not tainted."). Thus our conclusion that the out-of-court identification did not give rise to a substantial likelihood of irreparable misidentification compels us to conclude that the in-court identification was likewise admissible.

## III. CONCLUSION

Although this Court holds that the out-of-court identification procedure was unnecessarily suggestive, we hold that the identification itself was

---

were found in the maroon Honda Civic in which Richards was riding. There was also testimony that the police recovered $481, the same amount stolen from Coughlin, from one of the men in the car with Richards. Photographs of Coughlin's recovered belongings and the $481 were also admitted at trial. Additionally, Coughlin testified as to the description of the robbers he gave to the police, and a photograph of Richards as he appeared on the day of the robbery was admitted into evidence. Finally, there was testimony from the woman who followed the two robbers and saw them get into the maroon Honda Civic, which the witness pursued in her own vehicle until the police were able to pull over the Honda Civic in which Richards was riding. However, as we have concluded that the identification was reliable under the totality of the circumstances, we need not ultimately reach the harmless error issue in this case.

nevertheless reliable under the totality of the circumstances. Therefore, we hold that the trial court's admission of the pretrial identification was not erroneous. As a result, we hold that the in-court identification was also properly admitted. Accordingly, we affirm the trial court's August 4, 2008 Order of Judgment and Commitment.